99 P.3d 1046

Bobbie L. FRENCH, Plaintiff–Appellant,

v.

**HAWAII PIZZA HUT, INC.,**
Defendant–Appellee.

No. 23985.

Supreme Court of Hawai'i.

Sept. 30, 2004.

Reconsideration Denied Nov. 5, 2004.

Kirk H. Cashmere, on the briefs, for plaintiff-appellant.

John L. Knorek and Karen R. Tashima (Torkildson, Katz, Fonseca, Jaffe, Moore & Hetherington), on the briefs, Honolulu, for defendant-appellee.

LEVINSON, ACOBA, and DUFFY, JJ.; with MOON, C.J., concurring separately and dissenting; and NAKAYAMA, J., dissenting.

Opinion of the court by ACOBA, J.

We hold that the record in this case on the issue of whether a lifting restriction substantially restricts a major life activity for purposes of determining a disability pursuant to Hawai'i Revised Statutes (HRS) § 378–1 (1993) was inappropriate for summary judgment. Determination of this issue requires an individualized inquiry. Because, contrary to this precept the circuit court of the first circuit [1] (the court) granted summary judgment to Defendant–Appellee Hawaii Pizza Hut Inc. (Pizza Hut) with respect to the HRS § 378–2 (Supp.1998) disability discrimination claim of Plaintiff–Appellant Bobbie L. French (Appellant), we vacate that aspect of the November 29, 2000 judgment and remand that part of the case to the court. However, we further hold that Appellant failed to make a *prima facie* showing of age discrimination on her theories of "pattern or practice" and/or "disparate treatment" by Pizza Hut, and thus the court was right in granting summary judgment as to this claim. Additionally, we hold that the court was correct in granting summary judgment as to Appellant's gender discrimination claim because her administrative complaint submitted to the Hawai'i Civil Rights Commission (the HCRC) did not specify such discrimination, and such a claim was not consistent with Appellant's original theory of the case as submitted to the HCRC. Finally, we conclude the court erred in denying portions of Appellant's Motion to Compel Discovery.

## I.

In June 1994, Appellant was hired by Pizza Hut as an assistant restaurant manager and was promoted to restaurant manager in August 1994. In February 1995, Appellant was transferred to the Kaimukī Pizza Hut restaurant. In April 1995, Appellant notified her supervisor that she would undergo bladder surgery and a vaginal hysterectomy. Appellant informed Pizza Hut that she would have certain work restrictions when she returned. Pizza Hut recommended that Appellant be transferred to the Stadium Mall Pizza Hut restaurant to accommodate her condition because that location purportedly had a substantially lower sales volume and less staff than the Kaimukī restaurant.

Appellant's medical leave commenced May 9, 1995, and she underwent surgery on May 19, 1995. Appellant returned to work on August 19, 1995, on medical orders not to lift over twenty pounds and not to work more than eight hours a day. Before returning to work, Appellant requested assignment to the Kaimukī restaurant, but this was denied and she transferred to the Stadium Mall location.

The Stadium Mall restaurant was allegedly chronically understaffed. Appellant confronted her supervisor regarding the inability to comply with her work restrictions due to understaffing. Despite these concerns, Appellant's supervisor instructed her to decrease the employee hours to keep labor costs at a minimum. Because other employees were unavailable to assist her, Appellant was occasionally required to work fourteen or fifteen hours a day and was frequently required to lift more than twenty-five pounds. Appellant claimed that she experienced pain lifting in excess of twenty pounds.

On September 27, 1995, Appellant met with the Director of Operations, Randall Omoto, to inform him of the effects of her health and inquire about a raise in her salary. Omoto recommended that Appellant demote herself or quit employment. Approximately one week later, Appellant's physician renewed her restriction against working more than eight hours a day and increased the lifting restriction to twenty-five pounds. On December 6, 1995, Appellant met a second time with Omoto regarding her health problems. After the meeting, Appellant informed Omoto that she would immediately take vacation leave for two weeks. On December 18, 1995, Pizza Hut terminated Appellant for taking a vacation without authorization and adequate notice.

On March 19, 1996, Appellant filed a "Charge of Discrimination" against Pizza Hut with the HCRC for disability and age discrimination. On March 13, 1998, the HCRC issued a right-to-sue letter based on a finding of no cause. Appellant filed her complaint with the court on June 15, 1998. She alleged

---

1. The Honorable Kevin S.C. Chang and Gary W.B. Chang presided.

two claims for relief: (1) discrimination based on disability or perceived disability because of Pizza Hut's failure to reasonably accommodate her disability or perceived disability; and (2) discrimination in compensation based on age, gender, race and/or national origin.

On March 23, 2000, Appellant served her First Request For Production of Documents to Pizza Hut. Pizza Hut refused, *inter alia*, to produce (1) documents relating to (a) employee medical leaves, (b) employee transfers, (c) sales volume, and (d) Stadium Mall shift schedules; (2) Stadium Mall Pizza Hut personnel files; and (3) termination or resignation records of Stadium Mall employees. On August 22, 2000, Appellant filed a motion to compel discovery as to her request. On September 13, 2000, the court denied the motion in part.

On August 28, 2000, Pizza Hut filed its motion for summary judgment which was granted on October 10, 2000. Judgment was entered on November 29, 2000 in favor of Pizza Hut on all claims on the grounds that: (1) Appellant's impairment did not constitute a disability within the meaning of HRS § 378–2; (2) Appellant failed to establish a *prima facie* showing of age discrimination to establish a violation of HRS § 378–2; and (3) Appellant was precluded from bringing a claim of gender discrimination under HRS § 378–2 because she had neglected to raise the claim with the HCRC.[2]

## II.

On December 29, 2000, Appellant appealed from the judgment to this court. An award of summary judgment is reviewed *de novo* under the same standard applied by the circuit court. *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 104, 839 P.2d 10, 22, *reconsideration denied*, 74 Haw. 650, 843 P.2d 144 (1992); *see also Bitney v. Honolulu Police Dep't*, 96 Hawai'i 243, 250,

30 P.3d 257, 264 (2001); *Shoppe v. Gucci Am., Inc.*, 94 Hawai'i 368, 376, 14 P.3d 1049, 1057 (2000). Summary judgment "is appropriate where there is no genuine issue as to the material fact and the moving party is entitled to judgment as a matter of law." *Ross v. Stouffer Hotel Co.*, 76 Hawai'i 454, 457, 879 P.2d 1037, 1040 (1994). All evidence and inferences must be viewed in the light most favorable to the non-moving party. *Maguire v. Hilton Hotels Corp.*, 79 Hawai'i 110, 112, 899 P.2d 393, 395 (1995).

## III.

As to her claim of disability discrimination, Appellant maintains that the court erred (1) in concluding that Appellant's limitation on lifting over twenty-five pounds did not constitute an impairment under HRS § 378–2, (2) in deciding that a twenty-five-pound lifting restriction does not constitute a substantial limitation of a major life activity, (3) in not ruling on Appellant's claim that she was regarded by Pizza Hut as having a disability,[3] and (4) in failing to reach the issue of whether Appellant's transfer to the Stadium Mall restaurant constituted a reasonable accommodation of her disability.

As to her claims of compensation discrimination based on age, gender, race and national origin, Appellant contends that the court erred in concluding that: (1) Appellant failed to exhaust her administrative remedies regarding her claims of gender, race, and national origin discrimination because they were not raised in her "Charge of Discrimination" filed with the HCRC, (2) evidence submitted by Appellant was not sufficient to establish a *prima facie* showing of disparate treatment based on age, (3) Appellant improperly grouped together fifteen managers as one class to establish disparate treatment,[4] and (4) Appellant did not meet her

---

2. As indicated herein, Appellant conceded she did not muster sufficient evidence of race or national origin discrimination.

3. This claim was apparently based on HRS § 378–1, which provides in pertinent part that "[d]isability" includes "being regarded as having such an impairment [ (physical or mental) ]." Hawai'i Administrative Rules (HAR) § 12–46–182 defines "[b]eing regarded as having such an

impairment" as having "a physical or mental impairment that does not substantially limit a major life activity but is treated or considered by an employer or other covered entity as being so limited."

4. Because we conclude *infra* that the evidence presented by Appellant in support of her age discrimination claim was insufficient to establish

burden of properly authenticating certain documents appended to her motion in support of her age discrimination claim.[5]

As to Appellant's motion to compel discovery, Appellant maintains that the court erred: (1) in limiting production of documents relating to employee medical leaves, employee transfers, sales volume, and Stadium Mall shift schedules and (2) in denying production of documents regarding the personnel files of all Stadium Mall employees from July through December 1995 and (3) documents related to the termination or resignation of Stadium Mall employees between July 1995 and July 1996, on the ground that there were less invasive means of discovery.

## IV.

■ As to points (1) and (2) of Appellant's disability claim, we consider whether a twenty-five-pound lifting restriction is a disability within the meaning of HRS § 378–2. HRS 378–2 makes it an unlawful discriminatory practice "for any employer to refuse to hire or employ or to bar or discharge from employment, or otherwise to discriminate against any individual in compensation or in the terms, conditions, or privileges of employment" because of a person's race, sex, sexual orientation, age, religion, color, ancestry, disability, marital status, or arrest and court record. HRS § 378–2(1)(A). In line with HRS § 378–2, HAR § 12–46–181 (1995) prohibits an employer from discriminating against an employee because of his or her disabilities.

■ The Hawai'i statutes and HAR prohibiting discrimination based on disability are textually similar to the Americans With Disabilities Act of 1990(ADA), 42 U.S.C. § 12101. Because of the similarities between the ADA and our own HRS chapter 378, we adopt the analysis for establishing a *prima facie* case of disability discrimination under

HRS § 378–2 that was established in *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). In *Sutton*, to establish a *prima facie* case of disability discrimination under the ADA, a plaintiff has the burden of establishing that: (1) he or she is an individual with a "disability" within the meaning of the statute; (2) he or she is otherwise qualified to perform the essential duties of his or her job with or without reasonable accommodation; and (3) he or she suffered an adverse employment decision because of his or her disability. *Id.* at 477–78, 481, 119 S.Ct. 2139.

As to the determination of "disability," HRS § 378–1, similar to the ADA, defines disability as "the state of having a physical or mental impairment, which substantially limits one or more major life activities."[6] *See* 42 U.S.C. § 12102(2) (defining disability as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual"). Hence, a "physical or mental impairment" is a disability if the impairment "substantially limits" a "major life activity." HRS § 378–1.

■ In *Bitney*, we applied a three-part test derived from *Epstein v. Kalvin–Miller Int'l, Inc.*, 100 F.Supp.2d 222, 225–26 (S.D.N.Y.2000), to determine whether a plaintiff meets the disability requirement under the ADA. 96 Hawai'i at 251, 30 P.3d at 265. Although the plaintiff in *Bitney* based her claim on violations of the ADA, the test in that case is relevant in the instant case because HRS § 378–1 contains similar language found in the ADA. We have noted that when construing discrimination claims under HRS §§ 378–1 and –2, we may look "to the interpretations of analogous federal laws by the federal courts for guidance." *Shoppe*, 94 Hawai'i at 377, 14 P.3d at 1058.

a *prima facie* case of age discrimination, we need not address this point.

5. In light of our disposition of this point, *see infra*, and the court's consideration of these documents in the alternative, we do not address this point.

6. HAR § 12–46–182 defines disability as:

1) With respect to a person:
 (A) Having a physical or mental impairment which substantially limits one or more major life activities;
 (B) Having record of such an impairment; or
 (C) Being regarded as having such an impairment.

■ Under *Bitney,* the trial court must first consider whether a plaintiff's conditions are "physical or mental impairments." 96 Hawai'i at 251–52, 30 P.3d at 265–66 (quoting *Epstein,* 100 F.Supp.2d at 225). Our own HAR § 12–46–182(h)(1) and federal regulation 29 C.F.R. § 1630.2(h)(1) contain identical language defining "physical or mental impairments." *See* 29 C.F.R. § 1630.2(h)(1); HAR § 12–46–182(h)(1). "[P]hysical or mental impairments" is defined by both HAR § 12–46–182(h)(1) and 29 C.F.R. § 1630.2(h)(1) as "[a]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: ... musculoskeletal." "Musculoskeletal" refers to both a person's musculature and skeleton. *Webster's Seventh New Collegiate Dictionary* 558 (1965). In this case, Pizza Hut does not dispute that Appellant's lifting restriction qualified as a physical impairment.

"The [trial c]ourt must next consider whether the life activities allegedly affected by the impairment 'are "major" life activities under the ADA.' " *Bitney,* 96 Hawai'i at 252, 30 P.3d at 266 (quoting *Epstein,* 100 F.Supp.2d at 225) (internal quotation marks omitted). Under the relevant HAR 12–46–182, "lifting" is described as a major life activity. Major life activities are those "basic activities and functions which the average person in the general population can perform with little or no difficulty, including, but not limited to ... *lifting,* ... and working." HAR § 12–46–182 (emphasis added). Pizza Hut does not dispute that "lifting" is considered a major life activity.

"Finally, the [trial c]ourt must consider whether the plaintiff's impairment 'substantially limits' the major life activity he [or she] has identified." *Bitney,* 96 Hawai'i at 252, 30 P.3d at 266 (quoting *Epstein,* 100 F.Supp.2d at 226). An impairment "substantially limits" a major life activity if the individual is:

(1) In general:

 (A) Unable to perform a major life activity that the average person in the general population can perform; or

 (B) Significantly restricted as to the condition, manner or duration under which a person can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

HAR § 12–46–182; *see also* 29 C.F.R. § 1630.2(j)(1)(i), (ii). HAR § 12–46–182 further states that:

(2) The following factors should be considered in determining whether a person is substantially limited in a major life activity:

 (A) The nature and severity of the impairment;

 (B) The duration or expected duration of the impairment; and

 (C) The permanent or long-term impact of, or the expected permanent or long-term impact of the impairment.

Appellant argues that her ability to lift was substantially limited because lifting in excess of twenty pounds caused her significant pain. In addition, Appellant argues that this limitation has persisted for over five years and appears chronic. Appellant's physician documented her inability to lift in excess of twenty-five pounds at least through February 1996. Although Appellant recuperated from her May 1995 surgery by February 1996, the limitation on her ability to lift persisted.

Pizza Hut, on the other hand, contends that the definition of "substantially limits" does not include temporary impairments. HAR § 12–46–182 states that "[t]emporary, non-chronic impairments of short duration with little or no long-term impact usually are not 'disabilities.' " Pizza Hut asserts that Appellant's lifting limitation lasted only five months with minimal long term impact and is therefore not a disability. Furthermore, Pizza Hut maintains that, assuming Appellant's twenty-five-pound restriction was a permanent impairment, the restriction did not substantially limit the activity of lifting.

A number of federal cases cited by Pizza Hut conclude that a twenty-five-pound lifting restriction, as a matter of law, does not constitute a "disability" within the meaning of

the ADA.[7] However, the federal circuits are divided over the issue. Other federal courts recognize that lifting limitations substantially restricted the respective plaintiffs from engaging in a major life activity.[8]

We conclude that a grant of summary judgment in this case is inappropriate to determine whether a lifting restriction substantially limited Appellant's ability to perform the major life activity of lifting. In *Leicht v. Hawaiian Airlines, Inc.*, 77 F.Supp.2d 1134, 1148 (D.Haw.1999), *rev'd on other grounds*, 15 Fed. Appx. 552, 2001 WL 884708 (9th Cir.2001), the federal district court said that a determination of whether a disability substantially limits one or more major life activities requires a case-by-case analysis "looking at the effect the impairment has on the life of the individual." The United States Supreme Court has declared that "whether a person has a disability under the ADA is an *individualized inquiry*." *Sutton*, 527 U.S. at 473, 119 S.Ct. 2139 (emphasis in original).

The Supreme Court in *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002), explained that the ADA "defines 'disability' 'with respect to an individual' " and " 'makes clear' that 'Congress intended the existence of a disability to be determined in ... a case-by-case manner.' " *Id.* at 198, 122 S.Ct. 681 (quoting *Sutton*, 527 U.S. at 473, 119 S.Ct. 2139). The Supreme Court further posited that "the determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual." *Id.* (quoting 29 C.F.R. pt. 1630, App. § 1630.2(j) (2001)). Thus, "the determi-

7. *See generally Gomez v. Am. Bldg. Maint.*, 940 F.Supp. 255 (N.D.Cal.1996) (finding that a janitor who was restricted from heavy lifting, bending, and stooping did not have a disability because, although he could no longer perform the duties of a janitor with his employer, he was able to work); *Marinelli v. City of Erie*, 216 F.3d 354 (3d Cir.2000) (ruling that plaintiff was not disabled in lifting where he possessed a ten-pound lifting restriction because that restriction was not sufficiently different from the general population); *Mellon v. Fed. Express Corp.*, 239 F.3d 954, 957 (8th Cir.2001) (finding that plaintiff did not have disability despite her claim that she could not lift more than fifteen pounds and that she "should avoid other such stresses with her right arm").

8. *See e.g. Burns v. Coca–Cola Enters., Inc.*, 222 F.3d 247, 255 (6th Cir.2000) (upholding district court determination that employee with twenty-three-pound lifting restriction was disabled based on an individualized analysis); *Moroney v. United Parcel Serv., Inc.*, 70 F.Supp.2d 1267, 1271 (D.Kan.1999) (finding that employee with restrictions against repeatedly lifting over thirty pounds due to his back and other musculoskeletal impairments presented sufficient evidence to survive summary judgment on the issue of whether he was substantially limited in a major life activity); *Whitfield v. Pathmark Stores, Inc.*, 39 F.Supp.2d 434 (D.Del.1999) (ruling that genuine issue of material fact existed as to whether an employee who could not lift more than twenty pounds due to her back injury was substantially limited in the major life activity of, *inter alia*, lifting, precluding summary judgment); *Frix v. Florida Tile Indus., Inc.*, 970 F.Supp. 1027, 1034 (N.D.Ga.1997) (concluding that employee with a permanent back impairment preventing him

from lifting over twenty-five pounds is disabled under the ADA).

Although some jurisdictions have concluded, as a matter of law, that the inability to lift twenty-five pounds does not constitute a "disability" within the ADA, this jurisdiction has made no such determination; moreover HRS §§ 378–1 and –2 have not established such a rule. Indeed, as indicated *supra*, other jurisdictions have decided that the question is one of fact, not law.

As discussed, an impairment substantially limits a major life activity if an individual is "unable to perform," or is "[s]ignificantly restricted as to the condition, manner, or duration under which a person can perform a particular major life activity as compared to ... the average person in the general population...." HAR § 12–46–182; see 29 C.F.R. § 1630.2(j)(1)(i), (ii); *see also supra* 105 Hawai'i page 468, 99 P.3d page 1052. Such an inquiry involves factors such as the "nature and severity of the impairment," the "duration of the impairment," and its "permanent or long term impact." HAR § 12–46–182; *see supra* page 468, 99 P.3d page 1052.

We are persuaded by the Supreme Court's method of determining "whether a person has a disability," by making an "individualized inquiry" into the facts of each case. *Sutton*, 527 U.S. at 471, 119 S.Ct. 2139; *see Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 198, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002) (citing *Sutton* for the proposition that the ADA "makes clear" that "Congress intended the existence of a disability to be determined in ... a case-by-case manner"); *see also infra* pages 14–16; *Bitney*, 96 Hawai'i at 253, 30 P.3d at 267; *Leicht v. Hawaiian Airlines, Inc.*, 77 F.Supp.2d 1134, 1148 (D.Haw.1999), *rev'd on other grounds*, 15 Fed. Appx. 552, 2001 WL 884708 (9th Cir.2001).

nation of whether an individual is substantially limited in a major life activity must be made on a case-by-case basis." *Id.* (citation omitted).

Similarly, in *Bitney*, in applying the ADA we held that the definition of disability requires that "disabilities be evaluated 'with respect to an individual' and be determined based on whether an impairment substantially limits the 'major life activities of such an individual.' " 96 Hawai'i at 253, 30 P.3d at 267 (quoting U.S.C. § 12102(2)).[9] The plaintiff alleged her employer discriminated against her because she suffered from dyslexia. *Id.* at 248, 30 P.3d at 262. Our decision that the plaintiff's impairment did not limit her in any major life activity was based on the facts established by the plaintiff's own academic, employment, and residential histories, as well as her performance and personnel records at the Honolulu Police Department. *Id.* at 249, 30 P.3d at 263. In this case, however, genuine issues of material fact exist as to the effect the impairment has on Appellant.

In the instant case, the court incorrectly concluded that "regardless of the duration of the lifting restriction[,] 25 pounds is simply not substantially [sic] enough in this *[c]ourt's mind as a matter of law.*" (Emphasis added.) Such a ruling does not account for the effect the impairment has on Appellant's life. It is a fundamental principle in disability law that the issue of whether a plaintiff's major life activity is substantially limited must be resolved on a case-by-case basis. *Leicht*, 77 F.Supp.2d at 1148. Thus, a determination of whether the lifting restriction in this case is substantial requires an individualized inquiry that is inappropriate for summary judgment.

## V.

■ Pizza Hut further argues that even under an individualized case analysis, Appellant did not meet her burden of establishing that she was disabled in the major life activity of lifting, because she failed to provide the court with admissible evidence that the aver-

age person could lift more than twenty-five pounds. This argument, however, does not account for the burdens allocated in summary judgment proceedings. In *GECC Fin. Corp. v. Jaffarian*, 80 Hawai'i 118, 118, 905 P.2d 624, 624 (1995), this court affirmed the following part of the opinion of the Intermediate Court of Appeals (ICA) vacating the circuit court's order granting summary judgment:

The burden is on the party moving for summary judgment (moving party) to show the absence of any genuine issue as to all material facts, which, under applicable principles of substantive law, entitles the. moving party to judgment as a matter of law. This burden has two components.

First, *the moving party has the burden of producing support for its claim that: (1) no genuine issue of material fact exists with respect to the essential elements of the claim or defense which the motion seeks to establish or which the motion questions; and (2) based on the undisputed facts, it is entitled to summary judgment as a matter of law. Only when the moving party satisfies its initial burden of production does the burden shift to the non-moving party to respond to the motion for summary judgment and demonstrate specific facts,* as opposed to general allegations, that present a genuine issue worthy of trial.

Second, the moving party bears the ultimate burden of persuasion. This burden always remains with the moving party and requires the moving party to convince the court that no genuine issue of material fact exists and that the moving part is entitled to summary judgment as a matter of law.

*GECC Fin. Corp. v. Jaffarian*, 79 Hawai'i 516, 521, 904 P.2d 530, 535 (App.1995) (emphasis added) (citations omitted). As the moving party, Pizza Hut had the burden to demonstrate the absence of any genuine issue of material fact. Thus, it was Pizza Hut's burden, as the moving party, to produce admissible evidence that the average

---

9. The definition of "disability" in HAR § 12–46–182 refers to "a person" with respect to whether an impairment substantially limits a major life activity. Therefore, we construe HAR § 12–46–

182, like the ADA, to require an individualized inquiry. *See supra* note 6 for the text of HAR § 12–46–182.

person in the general population cannot lift more than twenty-five pounds. This it failed to do.

■ In addition, a genuine issue of material fact existed as to whether Appellant's impairment was chronic and long term, as Appellant argued, or temporary, as Pizza Hut asserted. Appellant's physician documented her inability to lift more than twenty-five pounds through February 1996. According to Appellant, her pain continued through the year 2000 whenever she attempted to lift items that weighed more than twenty pounds. The court must construe the evidence in the light most favorable to the non-moving party. *Wong–Leong v. Haw'n Indep. Refinery, Inc.,* 76 Hawai'i 433, 439, 879 P.2d 538, 544 (1994). Thus, for the purposes of summary judgment, the court was obligated to accept Appellant's representations regarding her lifting limitations.

Because the court determined that Appellant's condition did not constitute a substantial limitation of a major life activity, it did not reach points (3) and (4) concerning whether Pizza Hut regarded Appellant as having a disability and whether Appellant's transfer to the Stadium Mall Pizza Hut was a reasonable accommodation. In light of our disposition, these points on the disability issue are remanded for further proceedings.

### VI.

The dissent asserts that because "Appellant's lifting restriction is not substantially limiting on its face, she retains the burden of producing comparative evidence that her impairment renders her either unable to perform, or else significantly restricts the condition, manner, or duration of her ability to perform, a major life activity in comparison to the 'average person in the general population.' " Dissent at 105 Hawai'i at 481, 99 P.3d at 1065. Although we agree that Appellant may have such a burden at *trial,* Appellant does not bear such a burden on the summary judgment motion brought by Pizza Hut. *See supra* pages 470–71, 99 P.3d at 1054–55. On the contrary, the burden is on Pizza Hut to "show the *absence of any genuine issues* as to *all material facts* [,]" *GECC Fin. Corp.,* 79 Hawai'i at 521, 904 P.2d at 535

(emphases added), including showing the "absence of any genuine issues" of "material facts" surrounding whether Appellant's twenty-five-pound lifting limitation constitutes a substantial limitation of a "major life activity" as compared to the average person, *id.; see also* HRS § 378–1; HAR § 12–46–182. Inasmuch as the parties disagree as to whether Appellant's lifting limitation constitutes a "substantial limitation" of a "major life activity," Pizza Hut has failed to establish the "absence of any genuine issues as to all material facts." *GECC Fin. Corp.,* 79 Hawai'i at 521, 904 P.2d at 535.

Moreover, *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), upon which the dissent relies, is distinguishable from the present case. The movant in *Celotex* specifically argued that summary judgment was proper because the claimant had "failed to produce evidence" that the movant's product "was the proximate cause of the injuries" and specifically noted that the claimant failed to identify, *in responding to interrogatories,* any witnesses who could testify in this regard. *Id.* at 320, 106 S.Ct. 2548. The movant in *Celotex* maintained "that the plaintiff had failed to identify, *in answering interrogatories specifically requesting such information,* any witnesses whose testimony could establish an essential element of her claim." *Anderson v. Radisson Hotel Corp.,* 834 F.Supp. 1364, 1369 (S.D.Ga.1993) (citing *Celotex,* 477 U.S. at 320, 106 S.Ct. 2548) (emphasis in original).

In this light, the dissent blurs the distinction between the burden of proof at trial and the burdens of production at summary judgment in the present case. *See id.* at 1368. The defendant in *Anderson,* in support of a motion for summary judgment, set forth the elements of the claim at issue, and stated generally that the plaintiff failed to produce evidence to support those elements. *Id.* Similar to the dissent's position in the present case, the defendant in *Anderson* relied on *Celotex,* and asserted that it had met its burden by pointing out an absence of evidence on the record to support at least one essential element of the plaintiffs' claim. *Id.*

However, the *Anderson* court explained that, "[a]lthough *Celotex* stands for the proposition that under certain circumstances a summary judgment movant may carry its burden without presenting evidence *negating* an element of the other party's claim, *merely asserting that the non-moving party has not come forward with evidence* to support its claims is *not* enough." *Id.* (emphasis in original and emphasis added). As the court pointed out, "To repeat: the movant must first *demonstrate* that the non-moving party *cannot* carry its burden of proof *at trial.*" *Id.* (emphasis in original and emphasis added) (citation omitted). "The distinction between not placing proof in the record and not being able to offer proof at trial is crucial." *Id.* As emphasized by Justice White in *Celotex,*

> [a] plaintiff need not initiate any discovery or reveal his witness or evidence unless required to do so under the discovery Rules or by court order. Of course, he must respond if required to do so; but he need not also depose his witnesses or obtain their affidavits to defeat a summary judgment motion asserting only that he has failed to produce any support for his case.

477 U.S. at 328, 106 S.Ct. 2548 (White, J., concurring); *see also Anderson,* 834 F.Supp. at 1368.

As pointed out by the *Anderson* court, the movant in *Celotex* had taken the affirmative step, in its interrogatories, of asking the clinching question in discovery, and had received a favorable answer, and pointed out the plaintiff's implicit admission to the Court. *Anderson,* 834 F.Supp. at 1368 (distinguishing *Celotex,* 477 U.S. at 320, 106 S.Ct. 2548). Accordingly, the movant made a "show[ing of] the *absence of any genuine issues* as to

all material facts." *GECC Fin. Corp.,* 79 Hawai'i at 521, 904 P.2d at 535 [10] (emphasis added). In the present case, however, Pizza Hut has made no such showing, and *did not even argue* that Appellant had no evidence to prove whether her lifting restriction was a "substantial limitation" of a "major life activity," as compared to the average person. *See Celotex,* 477 U.S. at 328, 106 S.Ct. 2548 (White, J., concurring) ("It is not enough to move for summary judgment without supporting the motion in any way or with a conclusory assertion that the plaintiff has no evidence to prove his case.").

The dissent concedes that Appellant's obligation to establish by "comparative evidence that her impairment renders her . . . unable to perform . . . a major life activity in comparison to the 'average person in the general population,'" dissent at 105 Hawai'i at 481, 99 P.3d at 1065, is contingent upon the absence of a genuine issue of material fact with respect to whether the weight limitation on her lifting activity substantially impaired a major life activity "by [its very] nature." Dissent at 480, 99 P.3d at 1064. The record, however, reflects just such a genuine issue of material fact. Thus, the dissent errs in concluding that Pizza Hut "discharged its burden by 'pointing out' the absence of any evidence indicating that Appellant's ability to lift was restricted in comparison to the average person in the general population." Dissent at 481 n. 2, 99 P.3d at 1065 n. 2. Moreover, it is worth noting that Pizza Hut did *not move for summary judgment on such grounds.* On the issue of whether Appellant's lifting restriction was substantially limiting to a major life activity, Pizza Hut solely argued that Appellant's "lifting restriction, as

---

**10.** The dissent also relies on *Hall v. State,* 7 Haw.App. 274, 284, 756 P.2d 1048, 1055 (1988), an ICA opinion which quotes *Celotex.* Dissent at 105 Hawai'i at 481, 99 P.3d at 1065. However, *Hall* is similarly distinguishable from the present case. In *Hall,* the court granted the motion for summary judgment on the ground, *inter alia,* that the claims were precluded "under the doctrine of res judicata" and, as a result, "no genuine issues as to any material fact" existed. *Hall,* 7 Haw. App. at 283–84, 756 P.2d at 1055. The court granted summary judgment because the factual bases for Hall's claim were the same as those previously raised and decided in his prior lawsuit

and, thus, barred under the doctrine of *res judicata. Id.*

Moreover, following the ICA's decision in *Hall,* this court further clarified the burden of proof for a summary judgment motion, as explained in *GECC Fin. Corp.,* 79 Hawai'i at 521, 904 P.2d at 535 (explaining that the "ultimate burden of persuasion . . . *always remains with the moving party* and *requires the moving party to convince the court* that no genuine issue of material fact exists and that the moving party is entitled to summary judgment as a matter of law (emphases added)); *see supra* 105 Hawai'i page 470, 99 P.3d page 1054.

*a matter of law,* does not constitute a disability within the meaning of the Hawaii's disability law."[11] (Emphasis added.) At no point, in its motion for summary judgment or in its reply memorandum,[12] does Pizza Hut argue that Appellant's claims should be dismissed for failing to produce comparative evidence regarding the issue of whether Appellant's lifting restriction was "substantially limiting." And even if Pizza Hut, in its motion for summary judgment, had challenged the sufficiency of evidence in this regard, the threshold genuine issue of material fact was sufficient to defeat Pizza Hut's motion.

Whether Appellant's "major life activity" was "substantially limited," and whether Appellant's impairment was chronic or temporary, are questions of fact which, on the record, were not resolved. *See supra* 105 Hawai'i page 471, 99 P.3d page 1055. Only *after* Pizza Hut "satisfies its initial burden of production" should the "burden shift" to Appellant "to respond ... and demonstrate specific facts" in opposition. *GECC Fin. Corp.,* 79 Hawai'i at 521, 904 P.2d at 535. This court has explained that "any doubt concerning the propriety of granting the motion should be resolved in favor of the non-moving party." *Id.* (citations omitted). For the reasons discussed herein, Pizza Hut has not satisfied its initial burden, and the motion for summary judgment should not have been granted in this regard.

## VII.

As recounted previously, Appellant brought a claim of compensation discrimination based on age. The court granted Pizza Hut's motion for summary judgment as to age discrimination on the ground that Appellant failed to establish a *prima facie* showing of a violation of HRS § 378-2. In the case of age discrimination, we have adopted the analysis governing the federal Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-34. *See Schefke v. Reliable Collection Agency, Ltd.,* 96 Hawai'i 408, 425, 32 P.3d 52, 60 (2001) ("This court has adopted the burden shifting analysis set forth in *McDonnell Douglas Corp. v. Green,* [411 U.S. 792, 802-03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973),] in other types of HRS § 378-2 discrimination cases."); *Shoppe,* 94 Hawai'i at 377, 14 P.3d at 1058 (applying the *McDonnell Douglas* analysis to an age discrimination claim under HRS § 378-2). Appellant alleged two theories of age discrimination—pattern or practice discrimination and disparate treatment.[13]

### A.

"Under the pattern-or-practice paradigm, a plaintiff must prove, by circumstantial or direct evidence, that an employer's past actions evidence a pattern of illegal discrimination against a protected class." *Shoppe,* 94 Hawai'i at 377 n. 2, 14 P.3d at 1058 n. 2. A plaintiff who raises a pattern or practice claim has the initial burden of "demonstrating that unlawful discrimination has been the regular policy of the employer, *i.e.,* that 'discrimination was the company's standard operating procedure—the regular rather than the unusual practice.' " *Coates v. Johnson & Johnson,* 756 F.2d 524, 532 (7th Cir.1985) (quoting *Int'l Bhd. of Teamsters v. United States,* 431 U.S. 324, 336, 97 S.Ct.

11. Pizza Hut relies on cases from other jurisdictions for its assertion that Plaintiff's lifting restriction, *as a matter of law,* does not constitute a disability. As discussed previously, however, this jurisdiction has not established that a twenty-five-pound lifting limitation, as a matter of law, does not constitute a "disability" within the ADA, and HRS §§ 378-1 and -2 have not established such a rule.

12. Pizza Hut filed a reply memorandum, and a supplemental reply memorandum in support of its motion for summary judgment.

13. In *Shoppe,* we concluded that generally, an individual alleging employment discrimination

under the ADEA may pursue one or more of three available theories of discrimination:

> (1) intentional discrimination against a protected class to which the plaintiff belongs (also known as "pattern-or-practice" discrimination); (2) unintentional discrimination based on a neutral employment policy that has a disparate impact on a protected class to which the plaintiff belongs (also known as "disparate impact" discrimination); or (3) intentional discrimination against an individual who belongs to a protected class (also known as individual "disparate treatment" age discrimination).

94 Hawai'i at 377-78, 14 P.3d at 1058-59 (footnotes omitted).

1843, 52 L.Ed.2d 396 (1977)). The focus of this inquiry is on a pattern of discriminatory decision making, not on individual employment decisions. *Id.* Once a plaintiff establishes a *prima facie* case in a pattern or practice theory, the burden shifts to the employer to defeat the showing by demonstrating that the plaintiff's proof is inaccurate or insignificant, or by providing a non-discriminatory explanation for the apparently discriminatory result. *Id.*

To support her pattern or practice claim, Appellant apparently relies on circumstantial evidence of discrimination. She introduced evidence of fifteen people who were hired as managers in 1994 and 1995.[14] Appellant turned 40 years old on December 3, 1995. Of the fifteen managers, seven were paid more than Appellant (five males and two females). Both females who were paid more than Appellant were under the age of 40 in 1995. Of the five males who were paid more than Appellant, three were over the age of 40 in 1995. Two employees were paid the same as Appellant, a male age 43 and a female age 37. Among the remaining six managers who were paid less than Appellant, five were females, six were males, and five were 30 years old or younger.[15] Based on these numbers, Appellant claims that a disparate number of managers under the age of 40 were paid more than her.

**14.** In Appellant's memorandum in opposition to Pizza Hut's motion for summary judgment, she appended documents produced by Pizza Hut in discovery (Exhibits D, F, G, H, and I). Initially, the court was concerned about the authentication of the documents, but ultimately believed that the evidence relating to the fifteen managers hired in 1994 and 1995 would not be sufficient to establish a *prima facie* showing of disparate treatment based on age.

**15.** The evidence provided in Appellant's Opening Brief is as follows:

The seven managers hired in 1994 or 1995 who were paid more than [Appellant] were: Richard Chung, 31, hired 5/17/95 ($1230.00); Natalie Colon–Bodie, 38, hired 11/2/94 ($1384.64); Sherry Ann Monis, 25, hired 1/11/95 [$1287.50]; James Passion, 52, hired 4/9/94 [$1450.00]; Chris Spring, 43, hired 12/14/94 ($1346.16); Ronald Vallesteros, 54, hired 8/14/95 ($1730.80); and Kyle Wong, 31, hired 4/26/95 ($1650.00).

Pizza Hut contends that Appellant's statistics fail to account for significant factors such as years of experience or Pizza Hut's fast track program. As Pizza Hut argues, Appellant's statistics actually reveal that younger employees were paid less in some cases than older employees. In particular, the evidence shows that of the ten managers who were younger than Appellant, five were paid less. Depositions of Pizza Hut representatives indicated that compensation of newly hired managers was based on years of experience. Indeed, the statistics show a relatively even distribution of salaries among the managers according to age and several instances of younger managers being paid less than Appellant. Hence, Appellant failed to establish a *prima facie* case of age discrimination based on a theory of pattern or practice discrimination.

## B.

 Appellant also alleged a disparate treatment theory of age discrimination. In support of this theory, Appellant submitted evidence of the salaries of fifteen managers hired by Pizza Hut in 1994 and 1995, seven of whom were paid more than her. This is the same evidence that Appellant provided for her theory of pattern or practice discrimination. *See supra* Part VII.A. The evidence here appears to be "circumstantial evidence," as opposed to "direct evidence,"[16]

The two managers hired in 1994 or 1995 who were paid the same as [Appellant] are: Marie Dobransky, 37, hired 6/29/94 ($1181.36) and Gilbert Green, 43, hired 3/22/94 ($1181.36).

The six managers hired in 1994 or 1995 who were paid less than [Appellant] are: Carey Dodd, 28, hired 4/2/94 ($1153.92); Rene Jacintho, 31, hired 9/20/95 ($1122.73); Tiana Johnsen, 27, hired 6/24/95 ($1076.96); Wanda Lewis, 31, hired 5/24/95 ($1075.04); Jan Muranaka, 40, hired 3/23/94 ($1076.96); Lori Rios, 33, hired 10/25/95 ($1026.96).

(Format editted.) There were discrepancies between the information contained in Appellant's Opening Brief and the record regarding some employees' ages and salaries, but they do not affect the analysis above. One manager, Richard Chung, was listed in "Exhibit F," but not "Exhibit G."

**16.** In *Shoppe,* we said that the plaintiff appeared to assert direct evidence of age discrimination "because she was 'singled out' for criticism of

because the statistics are evidence of Pizza Hut's conduct, *i.e.*, the salaries it paid to managers, which Appellant uses to infer that Pizza Hut discriminated against her because of her age.[17]

*Schefke* applied disparate treatment discrimination analysis to an employee who claimed age discrimination in the payment of compensation.[18] It held that under HRS § 378-2,

> the plaintiff [must] first establish a prima facie case of discrimination by demonstrating (a) that the plaintiff is a member of a protected class, (b) that the plaintiff's employment situation is similar to that of an employee or employees who are not members of the protected class, and (c) that the employee or employees are compensated at higher rates than the plaintiff[.]

96 Hawai'i at 440, 32 P.3d at 84. In this case, Appellant did not establish a *prima facie* case of discrimination.

Appellant failed to show (1) that she was a member of a protected class, (2) that she was similarly situated to other employees who are not members of the protected class, and (3) that employees not members of the protected class were compensated at higher rates than Appellant. As to the first element, the evidence does not identify the protected class or the class to which Appellant belonged.[19] The next element requires Appellant to identify members who do not belong to the protected

class and to demonstrate that she is similarly situated to the relevant individuals. Again, the evidence does not identify individuals who were not members of the protected class and does not indicate that Appellant was similarly situated to those individuals. The final element required Appellant to demonstrate that individuals who are not members of the protected class were paid higher salaries than her. Assuming seven managers were paid more than Appellant, the evidence fails to disclose that the seven managers were *not* members of the protected class and to prove that she was similarly situated to the seven. Thus, the court was correct in granting summary judgment on the claim of age discrimination.

## VIII.

▇▇▇ At the hearing on Pizza Hut's motion for summary judgment on October 10, 2000, Appellant stipulated that she did not come forward with sufficient evidence to maintain a claim for race and national origin discrimination and therefore withdrew the claim. Therefore, the only remaining pertinent claim is gender discrimination.

The court granted summary judgment against Appellant's gender claim on the ground that Appellant failed to exhaust her administrative remedies. The court rested its decision on certain exhibits appended to Pizza Hut's motion for summary judgment.[20]

---

her grooming, and that such criticism, taken together with [her supervisor's] comment that [her employer] was 'aiming for a younger look,' amounts to direct evidence of age discrimination." 94 Hawai'i at 381, 14 P.3d at 1062.

**17.** In *Shoppe*, we concluded that to prove a claim of disparate treatment,

> [f]irst, under the "direct evidence" or "mixed motive" approach, the plaintiff must show by direct evidence that discriminatory factors motivated the adverse employment decision.... *Second, a plaintiff may attempt to prove individual disparate treatment by adducing circumstantial evidence of discrimination. When analyzing an individual's disparate treatment claim that relies on circumstantial evidence of employer discrimination, we have previously applied the burden-shifting analysis set forth by the United States Supreme Court in [McDonnell Douglas].*

94 Hawai'i at 378, 14 P.3d at 1059 (emphasis added).

**18.** In *Schefke*, we recognized that "*Shoppe* was concerned with age discrimination in hiring and discharge," while *Schefke* involved discrimination in the payment of compensation. 96 Hawai'i at 438, 32 P.3d at 83.

**19.** In support of her disparate treatment claim, Appellant presented evidence that seven managers were paid higher salaries than her. The record indicates that Appellant was 40 years old in 1995. Of the seven managers who were paid more than Appellant, three were older than Appellant and four were younger.

**20.** Exhibit 5 consisted of "Defendant Hawaii Pizza Hut Inc.'s First Request For Admissions To Plaintiff Bobbie L. French" and Exhibit 6 consisted of "Plaintiff's Response To Defendant Hawaii Pizza Hut Inc.'s First Request For Admissions To Plaintiff Bobbie L. French." At the hearing on Pizza Hut's motion for summary judgment, the court stated:

> As to the gender, race and national origin discrimination claim in Count II, *the [c]ourt*

Appellant does not dispute that the "Charge of Discrimination" form filed with the HCRC only indicated disability and age discrimination and did not specify gender discrimination. But Appellant argues that her gender claim is not barred because charge forms are generally completed by an HCRC investigator rather than by the complainant and the HCRC employee only checked the boxes for "age" and "disability" in the "cause of discrimination" section of the form. Although Appellant was not the drafting party, she signed each page of the HCRC complaint. As to the discrimination claims, Appellant had the opportunity to mark a box labelled "sex" and/or to amend the administrative complaint to add a claim for gender discrimination. Ultimately, it was Appellant's responsibility to insure that the forms were accurate. According to HAR § 12-46-5(d),[21] the HCRC merely offers assistance to the complainant in the drafting and filing of the written complaint.

In analogous circumstances, the Ninth Circuit Court of Appeals held that the plaintiff's state statutory claims of sexual harassment were preserved despite her failure to include specific allegations of sexual harassment on her HCRC form. *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1095, 1103 (9th Cir. 2002). In *B.K.B.*, the plaintiff neglected to include specific allegations of sexual harassment in her HCRC complaint. *B.K.B* is distinguishable, however, because, *inter alia*, (1) the plaintiff had checked the box indicating a charge of sexual harassment and (2) an HCRC official provided an affidavit stating that the plaintiff's "Right to Sue Letter was intended by the agency to afford her the right to pursue claims of sexual ... harassment" and that the agency typed the factual allegations in the charge on the plaintiff's behalf. *Id.* at 1100-01.

The Court of Appeals went on to state that the language of Equal Employment Opportunity Commission charges should be con-

strued " 'with the utmost liberality since they are made by those unschooled in the technicalities of formal pleading." *Id.* at 1100 (quoting *Kaplan v. Int'l Alliance of Theatrical & Stage Employees*, 525 F.2d 1354, 1359 (9th Cir.1975)). "The crucial element of a charge of discrimination is the factual statement therein." *Id.* In this light, the Court of Appeals set forth several factors to consider:

> In determining whether a plaintiff has exhausted allegations that she did not specify in her administrative charge, it is appropriate to consider such factors as the alleged basis of discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred. In addition, the court *should consider plaintiff's civil claims to be reasonably related to allegations in the charge to the extent that those claims are consistent with the plaintiff's original theory of the case.*

*Id.* (emphasis added). The Ninth Circuit reasoned that complainants who file discrimination charges are "laypersons and should not be held to a higher standard of legal pleading" than that employed with respect to a civil complaint. *Id.* at 1103.

Applying the foregoing factors set forth in *B.K.B.* to this case, we come to the same conclusion that Appellant's charge form, the "HCRC investigator's notes," and "List of Important Dates" addendum to the HCRC Pre-Complaint Questionnaire are relevant. These documents reveal that the transfer of Appellant to the Stadium Mall Pizza Hut and the higher pay of younger restaurant managers formed the bases of Appellant's declarations. Omoto was the only person named as responsible for transferring Appellant to the Stadium Mall Pizza Hut and denying Appellant's request for a raise, based on age and/or disability. The documents do not

---

*does believe there is an exhaustion requirement. And, there has been a showing through [Pizza Hut's] Exhibits 5 and 6 that there was no exhaustion of those claims.*

(Emphasis added.) Appellant posits that the relevant documents used by the court were Exhibit 5J, the "Charge of Discrimination" form; Exhib-

it 5L, the HCRC investigator's notes; and Exhibit 5C, the "List of Important Dates" addendum to the HCRC Pre-Complaint Questionnaire.

21. HAR § 12-46-5(d) states that "assistance in drafting and filing complaints is available to complainants at the commission's offices."

provide any facts indicating sex or gender discrimination. Indeed, in the "List of Important Dates" prepared by Appellant, the example of a pay discrepancy involved a female waitress, who allegedly was paid more but possessed less experience than Appellant. Under the circumstances, gender discrimination alleged in the civil complaint cannot be said to be "consistent with [Appellant's] original theory of the case" as submitted to the HCRC. *Id.* Therefore, the court was ultimately correct in ruling that Appellant was precluded from bringing a claim of gender discrimination under HRS § 378–2.

## IX.

 Appellant's claim that the court erred in denying Appellant's Motion to Compel Discovery in part, is reviewed on appeal for abuse of discretion. *See Hac v. Univ. of Hawai'i*, 102 Hawai'i 92, 95, 73 P.3d 46, 49 (2003) (holding that the court did not abuse its discretion in denying a motion to compel discovery in employment discrimination case). On March 23, 2000, Appellant served her First Request for Production of Documents to Pizza Hut. On April 25, 2000, Pizza Hut refused to produce (1) documents dated between 1995, the year Appellant was terminated, and 2000, the date of the request, as to (a) employee medical leaves, (b) employee transfers, and (c) sales volume, on the ground the request was vague and overbroad and, further, as to item (c), on the ground that this information was not discoverable until she had established a *prima facie* case for punitive damages. Pizza Hut agreed to produce the Stadium Mall shift schedules, designated herein as item (1)(d), but only from August 1, 1995 to December 1995. Further, Pizza Hut refused to provide (2) the personnel files of all Stadium Mall employees between July and December 1995 and (3) records relating to the termination or resig-

nation of Stadium Mall employees between July 1995 and July 1996.

On August 22, 2000, Appellant filed a motion to compel discovery. On September 13, 2000, the court, in denying the motion in part, (1) ordered production of documents relating to (a) employee medical leaves, (b) employee transfers, and (c) sales volumes for the limited period of January 1, 1995 through December 18, 1995, (2) required that personal information be redacted, and (3) limited item (1)(d) to the period of August 1, 1995 to December 6, 1995.

The court also denied production of items (2) and (3).

 As to the documents requested in item (1), we hold that the court abused its discretion in limiting Appellant's request. Hawai'i Rules of Civil Procedure (HRCP) Rule 26(b)(1) indicates that the subject matter of a litigant's requests are discoverable if the request was "relevant to the subject matter involved in the pending action" or the request "appears reasonably calculated to lead to the discovery of admissible evidence."[22] In *Wakabayashi v. Hertz Corp.*, 66 Haw. 265, 275, 660 P.2d 1309, 1315 (1983), this court concluded that although the trial court possesses considerable discretion in permitting discovery, the appellate court may overturn the decision of the trial court when there has been a "clear abuse of discretion that results in substantial prejudice to a party." *Wakabayashi* further recognized that "[t]he [HRCP], like the federal procedural rules, reflect a basic philosophy that a party to a civil action should be entitled to the disclosure of all relevant information in the possession of another person prior to trial, unless the information is privileged." *Id.*

In this case, the discovery of items (1)(a), (b), (c), and (d) were relevant to Appellant's allegation that Pizza Hut failed to adequately accommodate her disability upon her return

---

**22.** HRCP Rule 26(b)(1) states in pertinent part: (1) IN GENERAL. *Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action,* whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, docu-

ments or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not grounds for objection that the information sought will be inadmissible at the trial *if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.* (Emphases added.)

from medical leave. In line with this theory, such materials were pertinent to the question of whether Pizza Hut's explanation that Appellant was transferred to the Stadium Mall restaurant because of lower sales volume was pretextual.

■ By limiting discovery of items (1)(a), (b), and (c) to the period of January 1, 1995 to December 18, 1995, and item (1)(d) to the period of August 1, 1995 to December 6, 1995, the court unreasonably restricted the materials available to determine whether other employees returning from medical leave had in fact been transferred to restaurants similar to Stadium Mall. A longer period of time was necessary to determine whether a pattern or practice of transferring employees in this manner existed. While a one-year period is too brief as to items (1)(a), (b), and (c), a five-year period may be too lengthy. Thus, we remand for review by the court as to an appropriate period of time for items (1)(a), (b), and (c). In connection with item (1)(d), we hold that Appellant's request for approximately one year was reasonable.[23]

■ As to items (2) and (3) relating to the request for the personnel files of all Stadium Mall Pizza Hut employees and documents relating to the termination or resignation of all Stadium Mall employees, we also hold that the court abused its discretion in denying the motion. Along with objections that the request was vague and ambiguous, Pizza Hut objected to items (2) and (3) on the grounds that the documents were "not related to [Appellant] and her claims, not relevant to the subject matter and [were] not reasonably calculated to lead to the discovery of admissible evidence." The court denied Appellant's request on the ground that there were "less invasive means" available to Appellant to discover the information but did not identify the "means."

Contrary to Pizza Hut's position, items (2) and (3) were clearly relevant. Appellant's complaint alleged that some of the employees transferred to the Stadium Mall restaurant were "substandard" and "poorly trained." Pizza Hut asserted that it provided adequate staffing for the Stadium Mall restaurant and

that Appellant fired some employees because she disliked them. Thus items (2) and (3) were discoverable because they were relevant to Appellant's allegations that the employees at the Stadium Mall Pizza Hut were unqualified, and to Pizza Hut's defense of adequate staffing.

Furthermore, items (2) and (3) were not vexatious or broad because item (2) was limited in time to July through December of 1995, approximately the period of time Appellant was manager at Pizza Hut, and item (3) was limited to one year. Also, the scope of the discovery for items (2) and (3) was restricted to the Stadium Mall restaurant. We reiterate that a litigant in a civil action is entitled to access to all relevant information in the possession of another person before trial. *See Wakabayashi*, 66 Haw. at 275, 660 P.2d at 1315. The court may place conditions or limits on discovery of items (2) and (3) pursuant to the discretion provided by HRCP Rule 26(b)(1). But, a blanket denial in this case was not reasonable under the circumstances. Therefore, the court abused its discretion in denying Appellant's request as to items (2) and (3).

### X.

Based on the foregoing reasons, (1) the court's November 29, 2000 judgment in favor of Pizza Hut is affirmed as to Appellant's age, gender, race, and/or national origin discrimination claims, (2) the said judgment is vacated with respect to Appellant's disability discrimination claim and that claim is remanded for further proceedings, and (3) the court's September 13, 2000 discovery order is vacated and remanded to the extent set forth in this opinion.

Opinion by MOON, C.J., concurring in part and dissenting in part.

I agree with the majority that the circuit court erred in concluding that, as a matter of law, plaintiff-appellant Bobbie L. French's lifting restriction did not constitute a substantial impairment of a major life activity. I also agree with the majority that summary judgment was appropriate as to French's

---

**23.** Appellant's request was for a one-year period as to item (1)(d).

claims of age and gender discrimination. However, I agree with Justice Nakayama that, as in this case, when the claimed impairment is not substantially limiting by its nature, the plaintiff is required to produce comparative evidence indicating that the average person in the general population can either (1) perform the major life activity that the plaintiff cannot or (2) perform the activity under conditions, in a manner, or for a duration that the plaintiff cannot.

### Dissenting opinion by NAKAYAMA, J.

I respectfully dissent from the majority's holding that a lifting restriction of twenty-five pounds raises a genuine issue of material fact as to whether, as a consequence of her limitation on lifting, Appellant is "disabled" under Hawai'i Revised Statutes (HRS) § 378–2 (1993).

The disposition of Appellant's claim of disability discrimination turns on the construction and application of administrative rules that interpret the State's statutory prohibition on employment discrimination based on an employee's disability. Central to Appellant's claim is HRS § 378–2, which protects an individual who is "disabled" from being discriminated against in the terms, conditions, or privileges of employment on account of her "disability." HRS § 378–2(1)(A) (1993). A "disability" in turn is defined under HRS § 378–1 as "the state of having a physical or mental impairment which substantially limits one or more major life activities, having a record of such an impairment, or being regarded as having such an impairment." HRS § 378–1 (1993).

While the parties dispute whether Appellant's lifting restriction causes her to be "disabled" within the meaning of HRS § 378–1, they do not contest that her inability to lift more than twenty-five pounds constitutes a "physical impairment," and that "lifting" is a "major life activity." Accordingly, the only question left to be determined is whether Appellant's lifting restriction "substantially limits" her ability to lift.

Because the statute does not define the term "substantially limits," the accompanying Hawai'i Administrative Rules (HAR) may be looked to for guidance.[1] Under the HAR, "[c]ertain impairments such as blindness, deafness, HIV infection, and AIDS are by their nature substantially limiting" with respect to the individual's performance of major life activities. HAR § 12–46–182 (1998). An impairment that is not substantially limiting "by [its] nature" may alternatively be found to substantially limit a major life activity if the impairment renders the individual either

(A) Unable to perform a major life activity that the average person in the general population can perform; or

(B) Significantly restricted as to the condition, manner, or duration under which a person can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

*Id.* Finally, in determining whether an individual's impairment satisfies the above criteria, the following factors should be considered:

(A) The nature and severity of the impairment;

(B) The duration or expected duration of the impairment; and

(C) The permanent or long-term impact of, or the expected permanent or long-term impact of the impairment.

*Id.*

The HAR Rules therefore fashion a two-tiered inquiry to determine whether an individual's impairment is "substantially limiting." *Cf. Lusk v. Ryder Integrated Logistics,* 238 F.3d 1237, 1240–1241 (10th Cir.2001) (discerning such an approach in analogous federal regulations). The impairment may, "by [its] nature," impose a substantial limitation on the individual's ability to perform a major life activity on account of its undeniably pronounced impact on the individual's physical or mental abilities. HAR § 12–46–

1. Because the parties do not contest the issue, the validity of the pertinent HAR rules may be assumed for purposes of this appeal. *See State v.*

*Kotis,* 91 Hawai'i 319, 331, 984 P.2d 78, 90 (1999) ("Administrative rules, like statutes, have the force and effect of law.").

182 (1998). An individual whose impairment is so classified is entitled to the presumption that her major life activities are substantially limited, and is consequently relieved of any further obligation to produce evidence that she is disabled.

Should the impairment fail to satisfy the threshold of severity necessary to establish that it is substantially limiting by nature, the burden remains with the individual to produce comparative evidence indicating that the "average person in the general population" can either perform the major life activity that the individual cannot; or else is able to perform the activity under conditions, in a manner, or for a duration that the individual cannot. The plain language of HAR § 12–46–182 unequivocally requires the production of such comparative evidence as an essential element of a discrimination claim based on disability. Cf. RGIS Inventory Specialist v. HCRC, 104 Hawai'i 158, 160, 86 P.3d 449, 451 (2004) ("If an administrative rule's language is unambiguous, and its literal application is neither inconsistent with the policies of the statute the rule implements nor produces an absurd or unjust result, courts enforce the rule's plain meaning." (quoting Intern'l Bhd. of Elec. Workers, Local 1357 v. Hawaiian Tel. Co., 68 Haw. 316, 323, 713 P.2d 943, 950 (1986))).

Applying the foregoing construction, Appellant's claim that she is disabled cannot stand. Appellant makes no attempt to show that her lifting restriction is in some way analogous to the impairments of "blindness, deafness, HIV infection, [or] AIDS" that HAR § 12–46–182 identifies as being substantially limiting "by their nature." I am moreover convinced that any such attempt would fail, in light of the number of federal circuits now holding that a twenty-five pound lifting restriction does not, as a matter of law, constitute a substantial limitation on a person's ability to lift. See Colwell v. Suffolk County Police Dep't, 158 F.3d 635, 644 (2d Cir.1998) (ability to "lift objects . . . of maybe ten to twenty pounds" does not "support[ ] the conclusion that [plaintiff] is 'substantially' impaired in his ability to . . . lift . . . as compared with the average person"); Marinelli v. City of Erie, 216 F.3d 354, 364 (3d Cir.2000) (ten-pound lifting restriction "does not render [plaintiff] sufficiently different from the general population such that he is substantially limited in his ability to lift"); Williams v. Channel Master Satellite Sys., Inc., 101 F.3d 346, 349 (4th Cir.1996) ("[W]e hold, as a matter of law, that a twenty-five pound lifting limitation—particularly when compared to an average person's abilities—does not constitute a significant restriction on one's ability to lift, work, or perform any other major life activity."); Sherrod v. American Airlines, Inc., 132 F.3d 1112, 1120 (5th Cir.1998) (holding that plaintiff's inability to lift more than "twenty pounds frequently . . . is insufficient for a reasonable jury to find a substantial limitation on a major life activity"); Dutcher v. Ingalls Shipbuilding, 53 F.3d 723, 726 (5th Cir.1995) (plaintiff's ability to "do lifting and reaching as long as she avoids heavy lifting and repetitive rotational movements . . . [presents] no evidence . . . on which a jury could find that this impairment substantially limited a major life activity"); Helfter v. United Parcel Svc., Inc., 115 F.3d 613, 617 (8th Cir.1997) (inability to "lift more than ten pounds frequently and twenty pounds occasionally" does not substantially limit major life activities other than work); Aucutt v. Six Flags Over Mid–America, Inc., 85 F.3d 1311, 1319 (8th Cir.1996) (twenty-five pound lifting restriction held not to substantially limit any major life activities); Thompson v. Holy Family Hosp., 121 F.3d 537, 539–540 (9th Cir.1997) ("restriction from lifting more than 25 pounds on a continuous basis" held not to substantially limit the major life activity of lifting); see also Gillen v. Fallon Ambulance Serv., Inc., 283 F.3d 11, 22–23 (1st Cir.2002) (noting that "cases holding that an inability to lift heavy objects does not constitute a substantial limitation on a person's overall ability to lift . . . seem to be correctly decided" (citing Williams, supra )); Mays v. Principi, 301 F.3d 866, 869 (7th Cir.2002) (Posner, J.) ("We doubt whether lifting more than 10 pounds is [a major life] activity."). Because HRS § 378–2 and its accompanying agency rules are "textually similar" to the Americans with Disabilities Act and its supporting federal regulations, this court is free to credit our federal brethren's considerable experience in construing a

substantively identical federal statutory scheme. *See, e.g., Shoppe v. Gucci America, Inc.,* 94 Hawai'i 368, 377, 14 P.3d 1049, 1058 (2000) ("In interpreting HRS § 378–2 in the context of race and gender discrimination, we have previously looked to the interpretations of analogous federal laws by the federal courts for guidance."); *Furukawa v. Honolulu Zoological Soc'y,* 85 Hawai'i 7, 13, 936 P.2d 643, 649 (1997) ("The federal courts have considerable experience in analyzing these cases, and we look to their decisions for guidance.").

Accordingly, as Appellant's lifting restriction is not substantially limiting on its face, she retains the burden of producing comparative evidence that her impairment renders her either unable to perform, or else significantly restricts the condition, manner, or duration of her ability to perform, a major life activity in comparison to the "average person in the general population." *See* HAR § 12–46–182 (1998). By her own admission, this Appellant has failed to do.

A party moving for summary judgment bears the "burden of demonstrating that there is no genuine issue as to any material fact relative to the claim or defense," such that he or she "is entitled to judgment as a matter of law." *First Hawaiian Bank v. Weeks,* 70 Haw. 392, 396, 772 P.2d 1187, 1190 (1989) (citing 10A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 2727, at 121 (1983)). Because "[t]he evidentiary standard required of a moving party in meeting its burden on a summary judgment motion depends on whether the moving party will have the burden of proof on the issue at trial," *see GECC Fin. Corp. v. Jaffarian,* 79 Hawai'i 516, 521, 904 P.2d 530, 535 (App.1995), we have long recognized that a defendant who moves for judgment pursuant to Rule 56 may "discharge his burden by demonstrating that if the case went to trial there would be no competent evidence to support a judgment for his opponent." *Weeks,* 70 Haw. at 396, 772 P.2d at 1190. Accordingly, a motion for summary judgment is properly granted

> against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Hall v. State,* 7 Haw.App. 274, 284, 756 P.2d 1048, 1055 (1988) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–323, 106 S.Ct. 2548, 2552–2553, 91 L.Ed.2d 265 (1986)); *see also* 10A Wright, Miller & Kane, *Federal Practice & Procedure: Civil 3d* § 2727, at 474 (1998) ("[I]t is not necessary for the movant to introduce any evidence in order to prevail on summary judgment" if, "in cases in which the nonmoving party will bear the burden of proof at trial, the movant can ... establish[ ] that the opposing party has insufficient evidence to prevail as a matter of law[.]").[2]

---

**2.** The majority accordingly errs in assigning Appellee the burden, "as the moving party, to produce admissible evidence that the average person in the general population cannot lift more than twenty-five pounds." The majority's novel assessment of the movant's burden is well at odds with the established principle that "no express or implied requirement in Rule 56 [demands] that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1985) (emphasis in original). To the contrary, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the [trial] court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. at 2554.

In the instant case, Appellee discharged its burden by "pointing out" the absence of any evidence indicating that Appellant's ability to lift was restricted in comparison to the average person in the general population. Granting the motion for summary judgment was therefore proper, as Appellant failed to respond by proffering the comparative evidence essential to her disability discrimination claim.

Because Appellant admits that she lacks the comparative evidence necessary to prove an essential element of her case, the circuit court did not err in granting Appellee's motion for summary judgment.[3]

---

**3.** In her briefing before this court, Appellant openly admitted to her lack of comparative evidence indicating the lifting ability of the average person in the general population. Specifically, Appellant claimed that such evidence was unnecessary to defeat Appellee's summary judgment motion because: (1) "[s]uch an approach would essentially require that the plaintiff in every disability case retain a vocational or other expert to establish the abilities of an 'average' person in the community vis-a-vis each major life activity at issue;" (2) some federal courts interpreting the Americans with Disabilities Act have held that "the plaintiff is not required to present evidence comparing the plaintiff's ability to lift with the ability of the average person for purposes of summary judgment;" and (3) there was abundant evidence that Appellant herself was restricted from lifting more than twenty-five pounds.

I read Appellant's argument as a clear admission that the record contains no evidence that her lifting restriction impaired her ability to lift in comparison to the average person in the general population. Indeed, Appellant's response establishes that she labors under the misimpression that comparative evidence is not, as a matter of law, required for her to prevail on her disability discrimination claim.