267 P.3d 1230

Tara THOMAS, Petitioner/Plaintiff–
Appellant,

v.

Grant K. KIDANI,
Respondent/Defendant–Appellee.

No. SCWC–29456.

Supreme Court of Hawai'i.

Dec. 12, 2011.

Charles J. Ferrera, on the briefs, for Petitioner/Plaintiff–Appellant.

Calvin E. Young and Diane W. Wong of Ayabe Chong Nishimoto Sia & Nakamura, on the briefs, for Respondent/Defendant–Appellee.

NAKAYAMA, Acting C.J., McKENNA, J., in place of RECKTENWALD, C.J., Recused, Circuit Judge CHAN in place of ACOBA, J., Recused, Circuit Judge NACINO, in place of DUFFY, J., Recused, and Circuit Judge KIM, assigned by reason of vacancy.

Opinion of the Court by NAKAYAMA, J.

Petitioner/Plaintiff–Appellant Tara Thomas filed this lawsuit against her former attorney, Respondent/Defendant–Appellee Grant Kidani. Kidani represented Thomas in a real estate dispute wherein Thomas sued Ricardo Barbati, a realtor involved in the pur-

chase of her home, for misrepresentation of the property. The case went to trial and the jury decided the case against Thomas. Following that underlying trial, Thomas filed this lawsuit against Kidani alleging legal malpractice. Kidani filed, and the circuit court granted, his motion for summary judgment. The Intermediate Court of Appeals (ICA) affirmed. *Thomas v. Kidani*, No. 29456, 2010 WL 3349523 (App. Aug. 26, 2010) (SDO). Thomas filed a timely application for writ of certiorari.

We granted certiorari to clarify the standard of review for an appeal from a motion for summary judgment and also to clarify the burdens of proof on parties to legal malpractice cases in the procedural context of a summary judgment motion. We hold that the ICA applied an incorrect standard of review on appeal. However, upon *de novo* review, we hold that Kidani is entitled to summary judgment in this case, though our analysis differs from that of the trial court and ICA. We therefore affirm the grant of summary judgment on different grounds.

## I. BACKGROUND

In 1989, Thomas purchased real property in Hilo, Hawaiʻi. According to Thomas, Barbati represented at the time of the sale that the property had a cesspool. The property does not have a cesspool, which Thomas contends she discovered 11 years after the sale, in 2000. Thomas filed a lawsuit in Circuit Court[1] alleging misrepresentation, unfair and deceptive trade practices, negligence, and emotional distress. Kidani represented Thomas at trial against Barbati, and the jury delivered a verdict against Thomas, finding that she "knew or in the exercise of reasonable care should have discovered the location of the subject cesspool servicing her property on or before January 23, 1994." This date reflected the application of a six-year statute of limitations.

Following the conclusion of that underlying trial, Thomas filed this lawsuit against Kidani for legal malpractice.[2] In her complaint, Thomas alleged that Kidani committed mal-

practice when he did not argue that Barbati was Thomas's agent in her purchase of the property. Thomas contends that this "fiduciary fraud" argument would have rebutted Barbati's successful statute of limitations defense. Kidani filed a motion for summary judgment, arguing that he did present facts supporting an agency claim to the trial court, but alleging that "the trial court did not accept this interpretation of the facts." Kidani also argued that the fiduciary fraud claim is not supported by case law and would not have been successful at trial. The trial court agreed with Kidani and granted his motion for summary judgment, explaining that Kidani "did attempt to argue that the realtor was Plaintiff's sole agent and/or fiduciary; however, the trial court did not accept this interpretation of the facts."

Thomas appealed to the ICA. On August 26, 2010, the ICA filed a Summary Disposition Order ("SDO") affirming the trial court's November 3, 2008 judgment. *Thomas v. Kidani*, No. 29456, 2010 WL 3349523 (App. Aug. 26, 2010) (SDO). Therein the ICA held that the trial court properly granted defendant's motion for summary judgment. *Id.* at *3. The ICA wrote, in part:

> The circuit court did not err in granting Kidani's MSJ, *Omerod v. Heirs of Kaheananui*, 116 Hawaiʻi 239, 254–55, 172 P.3d 983, 998–99 (2007), and the findings in the Order Granting Kidani's MSJ that Tara [Thomas] contests are not clearly erroneous. *Bhakta v. County of Maui*, 109 Hawaiʻi 198, 208, 124 P.3d 943, 953 (2005).

*Id.* On September 16, 2010, the ICA filed its Judgment on Appeal. On October 26, 2010, Thomas timely filed an application for writ of certiorari, which this court granted on December 7, 2010. On April 28, 2011, this court granted a stay upon motion of petitioner's counsel. The stay was lifted on June 30, 2011.

## II. STANDARD OF REVIEW

### A. Motion for Summary Judgment

■ An appellate court reviews an award of summary judgment *de novo* under the

---

1. The Honorable Greg K. Nakamura presided over the underlying real estate case.

2. The Honorable Bert I. Ayabe presided over the instant legal malpractice case.

same standard applied by the circuit court. *Fujimoto v. Au*, 95 Hawai'i 116, 136, 19 P.3d 699, 719 (2001) (citing *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 104, 839 P.2d 10, 22, reconsideration denied, 74 Haw. 650, 843 P.2d 144 (1992)). This court articulated the standard as follows:

> Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

*Id.* (citations omitted). We must review the evidence in the light most favorable to the party opposing the motion for summary judgment. *Id.* at 137, 19 P.3d at 720 (citing *State ex rel. Bronster v. Yoshina*, 84 Hawai'i 179, 186, 932 P.2d 316, 323 (1997) and *Maguire v. Hilton Hotels Corp.*, 79 Hawai'i 110, 112, 899 P.2d 393, 395 (1995)).

## III. DISCUSSION

### A. The Standard of Review for Motions for Summary Judgment on Appeal

In her application for writ of certiorari, Thomas argues that the ICA erred because it applied the clearly erroneous standard of review, rather than the proper *de novo* standard.[3] In response, Kidani argues that the ICA did apply the *de novo* standard, and offers the ICA's citation to *Omerod v. Heirs of Kaheananui*, 116 Hawai'i 239, 254–55, 172 P.3d 983, 998–99 (2007), as proof.

 The parties are correct that the proper standard for an appellate court reviewing a grant of summary judgment is *de novo*. *Fujimoto v. Au*, 95 Hawai'i 116, 136, 19 P.3d 699, 719 (2001) (citing *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 104, 839 P.2d 10, 22, reconsideration denied, 74 Haw. 650, 843 P.2d 144 (1992)). While the ICA cited *Omerod*, it also held that "the findings in the Order Granting Kidani's MSJ that

Tara [Thomas] contests are not clearly erroneous." *Thomas v. Kidani*, 2010 WL 3349523, at *3 (citing *Bhakta v. County of Maui*, 109 Hawai'i 198, 208, 124 P.3d 943, 953 (2005)).

 *Bhakta* is relevant to today's case only for the articulation of the *de novo* standard. In that case, the petitioners challenged two of the trial court's actions: the denial of summary judgment, and the court's entry of an order supported by its findings of facts and conclusions of law. *Bhakta v. County of Maui*, 109 Hawai'i 198, 201, 124 P.3d 943, 946. This court articulated the standard of review for motions for summary judgment as *de novo*, but held that petitioners were not entitled to a review of the denial of summary judgment under the *Morgan* rule.[4] *Id.* at 207, 210–11, 124 P.3d at 952, 955–56.

 The clearly erroneous standard is irrelevant to this appeal. In *Bhakta*, the court utilized the standard only in reviewing the facts found by the trial court subsequent to its denial of summary judgment. *Id.* at 208, 124 P.3d at 953. This makes sense; the clearly erroneous standard of review exists because "on appeal we are to pay due deference to the trial court's findings." *Daiichi Hawaii Real Estate Corp. v. Lichter*, 103 Hawai'i 325, 357, 82 P.3d 411, 443 (2003). This is particularly appropriate in reviewing a trial court's assessment of witnesses or weighing of the evidence. *Id.* at 358, 82 P.3d at 444 (citing *Amfac v. Waikiki Beachcomber Inv.*, 74 Haw. 85, 117, 839 P.2d 10, 28 (1992)) (further citations omitted). Appellate courts apply this deferential standard because, for those types of determinations, the trial court is "better positioned than an appellate court to marshall and weigh the pertinent facts...." *808 Development, LLC v. Murakami*, 111 Hawai'i 349, 365, 141 P.3d 996, 1012 (2006). Contrast the review of the motion for summary judgment, in which the

---

3. Thomas raises three additional questions in her application. These questions are no longer relevant to the case because our *de novo* review affirms the grant of summary judgment on different grounds than the trial court and ICA.

4. The *Morgan* rule, inapplicable here, states that a trial court's denial of summary judgment due to the trial court's finding of genuine issues of material fact is not reviewable on post-trial appeal. *Bhakta* at 209, 124 P.3d at 954 (citing *Larsen v. Pacesetter Systems, Inc.*, 74 Haw. 1, 837 P.2d 1273 (1992)).

trial court applies the standard for a motion for summary judgment to the parties' filings. (See section III.B.2, *infra*, for further discussion.) An appellate court need not apply the deferential clearly erroneous standard of review to the trial court's grant of a motion for summary judgment because the appellate court is in as good of a position to assess the motion as the trial court.

The ICA's invocation of the clearly erroneous standard is inconsistent with Hawai'i law; the entirety of the trial court's decision should have been reviewed *de novo*. We granted certiorari in part to clarify that standard. Having done so, we now perform a proper *de novo* review of defendant's motion for summary judgment.

**B.** *De Novo* **Review Of The Motion For Summary Judgment**

1. *Legal Malpractice Standard And Burden Of Proof*

■ The elements of an action for legal malpractice are: (1) the parties had an attorney-client relationship, (2) the defendant committed a negligent act or omission constituting breach of that duty, (3) there is a causal connection between the breach and the plaintiff's injury, and (4) the plaintiff suffered actual loss or damages. *Coscia v. McKenna & Cuneo*, 25 Cal.4th 1194, 108 Cal.Rptr.2d 471, 25 P.3d 670, 672 (2001); 7 Am.Jur.2d *Attorneys at Law* § 223 (2007).

■ In this case, the fact that Thomas and Kidani formed an attorney-client relationship is undisputed. Because of this relationship, Kidani owed Thomas a duty "to use such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of the tasks which they undertake." *Blair v. Ing*, 95 Hawai'i 247, 259, 21 P.3d 452, 464 (2001) (quoting *Lucas v. Hamm*, 56 Cal.2d 583, 15 Cal.Rptr. 821, 364 P.2d 685, 689 (1961)). Thomas contends that Kidani breached this duty when he "refused to even argue that this realtor [Barbati] was Ms. Thomas' agent in that case." According to Thomas, this argument would have rebutted Barbati's "key defense" that the statute of limitations

had passed. Thomas further argues that proving Barbati was her agent:

> would have precluded the jury from even considering whether Ms. Thomas *should have discovered* that there was no cesspool on the property, because such an issue would have been irrelevant. Further, such a position would have shifted the burden of proof to the realtor that everything he did was in Ms. Thomas' best interest. Thus, rather than Ms. Thomas having to prove that the realtor was negligent, acted intentionally, made misrepresentations, etc., the realtor would have had the burden of proof to prove by a preponderance that everything he did was in Ms. Thomas' best interest.

■ The causation element of legal malpractice is often thought of as requiring a plaintiff to litigate a "trial within a trial." 7 Am.Jur.2d *Attorneys at Law* § 223 (2007). That is, a plaintiff must show "both the attorney's negligence and also what the outcome of the mishandled litigation would have been if it had been properly tried." *Collins v. Greenstein*, 61 Haw. 26, 38, 595 P.2d 275, 282 (1979). In this case, the burden falls on Thomas to prove that Kidani did not present this agency theory at trial, and that she would have prevailed at trial, had he presented the theory.

2. *Summary Judgment Standard And Burden Of Proof*

■ This court has articulated the following rule for motions for summary judgment:

> Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

*Fujimoto v. Au*, 95 Hawai'i 116, 136, 19 P.3d 699, 719 (2001) (citations omitted). "A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Id.* We review the evidence in the light most favorable to the party opposing the motion for

summary judgment. *Id.* at 137, 19 P.3d at 720 (citations omitted).

The party moving for summary judgment bears the burden of proof to show the absence of genuine issues of material fact and entitlement to judgment as a matter of law. *Stanford Carr Dev. Corp. v. Unity House Inc.*, 111 Hawai'i 286, 295–96, 141 P.3d 459, 468–69 (2006). Where, as here, the moving party is the defendant and does not bear the burden of proof at trial, he may prevail on a motion for summary judgment by demonstrating that the plaintiff "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Exotics Hawaii–Kona, Inc. v. E.I. Du Pont De Nemours & Co.*, 116 Hawai'i 277, 302, 172 P.3d 1021, 1046 (2007) (citing *Hall v. State*, 7 Haw.App. 274, 284, 756 P.2d 1048, 1055 (1988)) (emphasis omitted).

The Supreme Court of the United States explained the burden of proof in the context of a motion for summary judgment in *Celotex Corp. v. Catrett.* In that case, Myrtle Nell Catrett, acting as administratrix of her deceased husband's estate, filed a lawsuit against Celotex and other corporations arguing that her husband's death was caused by exposure to products containing asbestos. *Celotex Corp. v. Catrett*, 477 U.S. 317, 319, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Celotex moved for summary judgment, arguing that Catrett failed to prove Celotex's liability, and the trial court granted the motion. *Id.* Catrett appealed, and the Court of Appeals reversed the trial court, holding that Celotex's motion for summary judgment was "fatally defective" because Celotex did not include any evidence to prove its lack of liability. *Id.* at 321, 106 S.Ct. 2548. The United States Supreme Court granted certiorari and reinstated the trial court's order granting summary judgment, emphasizing that a motion for summary judgment does not shift the ultimate burden of proof from Catrett to Celotex. *Id.* at 322, 106 S.Ct. 2548. Rather than requiring Celotex to make an affirmative showing, Celotex is entitled to summary judgment if it shows that Catrett cannot establish all essential elements on which she bears the burden of proof at trial. *Id.* As the Court explained, "One of the principal purposes of the summary judgment rule [5] is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose." *Id.* at 323–24, 106 S.Ct. 2548.

As articulated within the context of this case, even though Kidani is moving for summary judgment, the ultimate burden of proof in the case rests with Thomas. Summary judgment for Kidani is proper if Kidani shows that Thomas cannot meet her burden of proof. He may do so by showing either that he presented the agency theory at trial (thus defeating the breach element to Thomas's legal malpractice claim), or by showing that Thomas cannot establish that she would have prevailed at trial, had Kidani presented the theory (thus defeating the causation element).

### 3. Kidani Shows That Thomas Cannot Meet Her Burden Of Proof That She Would Have Prevailed At Trial

As noted above, a plaintiff in a legal malpractice case must litigate a trial within a trial; she must show that the outcome of the litigation would have been in her favor, had the attorney refrained from committing the alleged breach of duty. *Collins v. Greenstein*, 61 Haw. 26, 38, 595 P.2d 275, 282 (1979). Thus, Thomas must show that she would have prevailed at trial, had Kidani argued that Barbati was her agent. In his motion for summary judgment, Kidani argues that Thomas cannot meet her burden of proof, and that he is entitled to judgment as a matter of law. First, he argues that he did present the agency argument in the underlying trial but that the court in that case did not agree with this version of the facts. The

---

5. Federal Rule of Civil Procedure Rule 56 has since been modified. However, the version in effect at the time of *Celotex* is in relevant aspects substantively identical to the current Hawai'i Rules of Civil Procedure Rule 56. We may look to federal cases interpreting their rule for persuasive guidance. See *Pulawa v. GTE Hawaiian Tel.*, 112 Hawai'i 3, 19 n. 15, 143 P.3d 1205, 1221 n. 15 (2006) (citations omitted).

trial court in the malpractice action agreed with this argument, and granted summary judgment on this ground. In performing our *de novo* review of the motion for summary judgment, we are persuaded that even if Kidani had argued Thomas's legal theory, it would have been inadequate to change the outcome of the trial below.

Thomas argues that under a "fiduciary fraud" theory of liability, there is a burden shift, and instead of the plaintiff carrying the burden to show fraud, the defendant carries a burden to show that no fraud was committed. She also contends that the statute of limitations begins running upon actual knowledge of the misrepresentation, not when the plaintiff should have known of it. Kidani disputes both arguments. We hold that her argument regarding the statute of limitations is a misstatement of law, and that the application of the proper statute of limitations, combined with the jury's findings from the underlying trial, show that Thomas would not have prevailed at trial, had Kidani presented her fiduciary fraud argument.

Thomas argues "in cases where the fraudfeasor stands in a fiduciary relationship with plaintiff, courts, including those in Hawaii, generally require that the plaintiff have actual notice to begin the statute on the claim." To support her argument, Thomas cites *Poka v. Holi*, 44 Haw. 464, 357 P.2d 100 (1960); *Adair v. Hustace*, 64 Haw. 314, 640 P.2d 294 (1982); and *Neel v. Magana*, 6 Cal.3d 176, 98 Cal.Rptr. 837, 491 P.2d 421 (1971). As Kidani shows, these cases do not support Thomas's argument.

The language Thomas cites from *Poka v. Holi* is inapposite to today's case. In that case, William Poka, a former administrator of an estate, sought specific performance on an oral contract for land transfer he claimed to have made with decedent, Alice Holi, before she died. *Poka v. Holi*, 44 Haw. at 465, 357

P.2d at 102. After serving as administrator for nearly twenty years, William was removed "for failure to file his accounts, among other reasons," and Alice's husband, Nani Holi, was appointed administrator de bonis non. *Id.* Nani asserted laches [6] as a defense to William's request for specific performance on the land transfer. *Id.* at 466, 357 P.2d at 108. William argued that Nani could not assert laches against him because William had been living in the subject real property for decades. *Id.* As this court explained, laches is a "lack of diligence" and, in many cases, "may be negatived by possession which asserts the right under the contract sought to be enforced." *Id.* at 478, 357 P.2d at 108. However, an exception to this rule is when the person asserting possession to defeat laches is the administrator of the alleged grantor's estate; in that case, possession is inadequate and the decedent's heirs are entitled to actual knowledge or notice of William's claim. *Id.* at 480, 357 P.2d at 109. This holding is unrelated to, and not supportive of, Thomas's argument.

*Adair v. Hustace* is similarly unsupportive. In fact, the language Thomas cites from footnote seven is appended to one of the case's holdings, a holding that directly contradicts her argument. As this court wrote,

> crossclaimants argue that where the basis of a claim is fraud or breach of a confidential relationship, laches should not operate until after a claimant has actual knowledge of the claim, as opposed to knowledge of facts and circumstances sufficient to impute his knowledge of the claim. This proposal is untenable....

*Adair v. Hustace*, 64 Haw. 314, 322, 640 P.2d 294, 300 (1982). The court goes on to cite three cases rejecting the actual knowledge test, but focusing instead on the reasonableness of the tardy party's delay. *Id.* at 322–

---

**6.** Black's Law Dictionary defines "Laches" as "Unreasonable delay in pursuing a right or claim—almost always an equitable one—in a way that prejudices the party against whom relief is sought." Black's Law Dictionary 953 (9th ed. 2009). This court has explained that the statute of limitations applies to legal causes of action, while laches applies to actions requesting equitable relief. *Adair v. Hustace*, 64 Haw. 314, 321, 640 P.2d 294, 300 (1982) ("(i)n actions at law,

the question of diligence is determined by the words of the statute ... (i)n suits in equity the question is determined by the circumstances of each particular case.") (quoting *Patterson v. Hewitt*, 195 U.S. 309, 317, 25 S.Ct. 35, 49 L.Ed. 214 (1904)). Thomas does not explain the applicability of the equitable doctrine of laches to her legal action for fraud. We analyze her argument assuming, but not deciding, applicability.

23, 640 P.2d at 301 (citing *In re Kealiiaho-nui*, 9 Haw. 1 (1893) (a party may assert fraud after a lapse of time if he was not at fault for the delay); *In re Nelson*, 26 Haw. 809 (1923) (permitting transfer of title twenty-four years after eligibility where donee had neither actual nor constructive notice of the eligibility); *Brown v. Bishop Trust Co.*, 44 Haw. 385, 355 P.2d 179 (1960) (permitting summary judgment against plaintiff even though plaintiff did not have actual knowledge of trustee's liability because plaintiff had enough facts to reasonably provoke inquiry)).

Thomas offers a third case, *Neel v. Magana*, 6 Cal.3d 176, 98 Cal.Rptr. 837, 491 P.2d 421 (1971), arguing that the fiduciary relationship makes it unreasonable to require actual notice of wrongdoing. This case is unsupportive of Thomas's asserted requirement of actual knowledge; the holding of that case is that constructive knowledge suffices to start the statute of limitations. As the Supreme Court of California explained, "We therefore hold that in an action for professional malpractice against an attorney, the cause of action does not accrue until the plaintiff knows, *or should know*, all material facts essential to show the elements of that cause of action." 6 Cal.3d 176, 98 Cal.Rptr. 837, 491 P.2d at 433 (emphasis added).

 Under Hawaii's discovery rule, the statute of limitations begins to run when the plaintiff "discovers or should have discovered the negligent act, the damage, and the causal connection between the former and the latter." *Yamaguchi v. Queen's Medical Center*, 65 Haw. 84, 90, 648 P.2d 689, 693–94 (1982). Our courts have employed this rule in several contexts. *Ass'n of Apartment Owners of Newtown Meadows v. Venture 15, Inc.*, 115 Hawai'i 232, 167 P.3d 225 (2007) (defective construction); *Blair v. Ing*, 95 Hawai'i 247, 21 P.3d 452 (2001) (legal malpractice); *Russell v. Attco, Inc.*, 82 Hawai'i 461, 923 P.2d 403 (1996) (premises liability); *Yamaguchi v. Queen's Medical Center*, 65 Haw. 84, 648 P.2d 689 (1982) (medical malpractice). The cases Thomas cites do not prove that cases involving fraud disregard this rule.

 Kidani also shows that Thomas's expert declaration from Steven D. Strauss, an attorney licensed to practice in Hawai'i, likewise does not satisfy Thomas's burden of proof. Strauss opined that Kidani had a duty to attempt to plead and prove a cause of action for fiduciary fraud. He also opined that pleading this cause of action would have shifted the burden for the trial from Thomas to Kidani. Kidani contends that Strauss's declaration does not meet the requirements of *Exotics Hawaii–Kona, Inc. v. E.I. Du Pont De Nemours & Co.*, 116 Hawai'i 277, 172 P.3d 1021 (2007), because it is based on conjecture and speculation, and because it contains improper legal conclusions. We agree.

In *Exotics Hawaii–Kona, Inc. v. E.I. Du Pont De Nemours & Co.*, the trial court awarded summary judgment to defendant Du Pont in a case brought by commercial growers alleging fraud, misrepresentation, non-disclosure, and other claims following a settlement agreement. 116 Hawai'i 277, 283–84, 172 P.3d 1021, 1027–28 (2007). We upheld summary judgment in favor of Du Pont on the grounds that plaintiffs were unable to prove damages. *Id.* at 283, 172 P.3d at 1027. Plaintiffs had offered proof in the form of affidavits from attorney expert witnesses, but we held that the affidavits did not demonstrate a genuine issue of material fact to defeat summary judgment. *Id.* at 305, 172 P.3d at 1049. The affidavits simply stated the experts' conclusions on the ultimate legal issues, but did not include the factors considered or the analysis followed by the experts. *Id.* Because of this omission, this court upheld summary judgment, explaining that "[t]he unsubstantiated conclusions of the plaintiffs' experts are insufficient to raise a genuine issue of material fact that would preclude summary judgment." *Id.; see also Acoba v. Gen. Tire, Inc.*, 92 Hawai'i 1, 14, 986 P.2d 288, 301 (1999), ("Although expert testimony may be more inferential than that of fact witnesses, in order to defeat a motion for summary judgment[,] an expert opinion must be more than a conclusory assertion about ultimate legal issues.") (*quoting Ferguson v. District of Columbia*, 629 A.2d 15, 20 (D.C.App.1993)).

The Strauss declaration is similar to the affidavits this court considered in *Exotics*

*Hawaii–Kona* because it provides conclusions on essential elements of Thomas's legal malpractice claims without demonstrating the connection between the circumstances of the case and his opinion. The declaration does not cite any legal authority, either from Hawai'i or other jurisdictions, to support his conclusions that Thomas's fiduciary fraud argument applies in the context of this case and would have affected outcome of the trial, had Kidani presented it. The declaration also presents no cogent rationale as to why the fiduciary fraud argument should apply in this context. Accordingly, the declaration does not help meet Thomas's burden to prove that she would have prevailed below, had Kidani argued her agency theory.

We agree with Kidani that Thomas does not satisfy her burden of proof to show that she would have prevailed at trial because her argument relies on the faulty premise that actual notice is required to trigger the statute of limitations. The discovery rule states that the statute of limitations begins running when the plaintiff knew or should have known of the damage. Accordingly, Barbati's "key defense" that the statute of limitations had run on her claims would have also defeated this agency claim, had Kidani made it. "When there has been a belated discovery of the cause of action, the issue whether the plaintiff exercised reasonable diligence is a question of fact for the court or jury to decide." *Vidinha v. Miyaki*, 112 Hawai'i 336, 342, 145 P.3d 879, 885 (App. 2006). In Thomas's trial against Kidani, the jury found "that Defendants have proven by a preponderance of the evidence that Plaintiff knew *or in the exercise of reasonable care should have discovered* the location of the subject cesspool servicing her property on or before January 23, 1994." That date, January 23, 1994, reflects the application of a six-year statute of limitations.[7] Accordingly, even assuming that Thomas satisfies her burden of proving that Kidani did not argue her agency theory below, and further assuming

that he would have been able to establish that Barbati was Thomas's agent, Kidani shows that Thomas cannot meet her burden to prove that she would have successfully overcome the statute of limitations.

In summary, even though Kidani moved for summary judgment, Thomas retains the burden of proving that she would have prevailed at trial had Kidani presented the fiduciary fraud theory. As the movant for summary judgment, Kidani may prevail if he shows that Thomas cannot meet her burden. The court holds that Thomas did not carry her burden to prove that she would have prevailed on her "fiduciary fraud" theory in trial. Kidani's defense against Thomas's unsupported claim is successful; there are no material facts in dispute that would affect our analysis of this element, and Kidani has shown that he is entitled to summary judgment as a matter of law. The ICA's judgment affirming the trial court's grant of summary judgment is thus affirmed, on the grounds articulated above.

---

7. There is no explicit statute of limitations for claims of real estate fraud. We need not determine exactly which general statute of limitations should apply because six years is the longest statute of limitations potentially applicable to the case. *See Higa v. Mirikitani*, 55 Haw. 167, 517

P.2d 1 (1973) (holding that the six-year statute of limitations for claims sounding in contract applied to legal malpractice, rather than the two-year statute of limitations for claims sounding in tort).