**Electronically Filed
Supreme Court
SCWC-13-0000388
03-MAY-2016
08:29 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

EDWIN GARCIA,
Petitioner/Plaintiff-Appellant,

vs.

BERNARD ROBINSON, M.D.,
Respondent/Defendant-Appellee.

SCWC-13-0000388

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-13-0000388; CIV. NO. 10-1-2338)

MAY 3, 2016

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON JJ.

OPINION OF THE COURT BY POLLACK, J.

In Ray v. Kapiolani Medical Center, 125 Hawai'i 253, 259 P.3d 569 (2011), this court noted that Hawai'i Revised Statutes (HRS) § 671-3(b) supplies the standard for a physician's duty to disclose information to the patient. Id. at 266, 259 P.3d at 582. Following Ray, in Ngo v. Queen's Medical Center, 136 Hawai'i 54, 358 P.3d 26 (2015), we held that the

prior formulation of the first element of the common law medical tort of negligent failure to obtain informed consent had changed from "the physician owed a duty to disclose the risk of one or more of the collateral injuries that the patient had suffered" to "the physician owed a duty of disclosure under HRS § 671-3(b)." Id. at 68-69, 358 P.3d at 40-41. In this case, we apply Ngo and further clarify our common law as to the nature and source of expert medical evidence required to establish a prima facie case of negligent failure to obtain informed consent.

## I.  BACKGROUND

### A. Garcia's Injury and Medical Treatment

Edwin Garcia suffered a lower back injury at work and sought medical treatment from his then-primary care provider, who completed an initial evaluation of his condition. He subsequently received medical and conservative therapy to treat his back injury. However, Garcia felt that this treatment did not sufficiently improve his condition to allow him to perform satisfactorily at work. An MRI of his back showed evidence of discogenic disease with mild bulge and neural encroachment in his lower back, and he was referred to Dr. Bernard Robinson for a neurosurgical consultation.

Garcia first consulted with Dr. Robinson regarding his injury on January 11, 2008. Prior to making his decision to

2

undergo lumbar spine surgery, Garcia generally discussed with Dr. Robinson the risks and consequences involved with the proposed surgery. During that discussion, Garcia stated that Dr. Robinson told him the surgery had a ninety-percent chance of success, he would be pain free, and he would be "up and dancing in three days." Based on these representations, Garcia related that he decided to proceed with the surgery.

At his deposition, Dr. Robinson testified that he did not recall communicating that Garcia would be "up and dancing" after the surgery, stated that he does not discuss percentages with his patients, and denied "unequivocally" that he told Garcia he would have no further pain. Dr. Robinson stated that it would be "preposterous" to tell a patient that he would be "dancing three days after lumbar spine surgery" because lumbar spine surgery is "one of the most painful experiences that patients undergo in surgery" and it takes time to recover from this procedure. He also indicated that he discusses the risk of increased pain with every patient because there is a risk that patients might experience further pain from this procedure.

Dr. Robinson related that he specifically advised Garcia of other surgical risks associated with the proposed procedure, including allergy, hemorrhage, infection, technical problems, paralysis, failure of surgery to be beneficial, and

3

even death.  He indicated that he discusses the same list of risks with every patient in addition to other risks depending on the situation.  Dr. Robinson testified that he counsels each patient several times in extensive detail before performing the surgery to ensure that the patient is fully informed and really wants to undergo surgery.  He tells every patient about potential technical problems and explains that "surgery is a very involved complex production of treatment and there are some things that can go wrong."

Although Dr. Robinson denied discussing percentages with Garcia, he testified that generally he tries to imply that there is a better chance that the patient's condition will improve after the surgery than following the patient's current course of treatment.  Dr. Robinson also stated that he told Garcia that surgery for discogenic disease could "resolve," or, in other words, could improve his pain symptoms.  He indicated that he carefully advised Garcia of his diagnosis and treatment options and urged Garcia, before undergoing surgery, to continue conservative treatment until it no longer provided sufficient relief.  Dr. Robinson further explained that the surgery performed was "not of an emergency nature" and expressed his view that Garcia could have continued conservative treatment.

On February 28, 2008, Garcia signed a "Consent to Operation Postoperative Care, Medical Treatment, Anesthesia and/or Procedure" form (Consent Form).  The Consent Form indicated that Garcia authorized Dr. Robinson to treat "degenerative lumbar disc and spine disease at L4-5-S1," or, in lay terms, "pinched nerves in the lower back causing leg pains." The pre-printed language on the Consent Form stated that "[t]he procedure(s) planned for treatment of my condition(s) has (have) been explained to me by my physician as follows," to which Dr. Robinson handwrote in "L4-5 microlaminectomy and foraminotomy with discectomy if needed after intraoperative examination of the disc."  This meant that Dr. Robinson would perform a "low back spinal surgery to decompressed pinched nerves as necessary."

The pre-printed language of the Consent Form also stated the following: "I have been informed that there are many significant risks, such as severe loss of blood, infection, cardiac arrest and other consequences that can lead to death or permanent or partial disability, which can result from any procedure" and "[n]o promise or guarantee has been made to me as to result or cure."  Dr. Robinson handwrote on the bottom of the Consent Form, under the heading "additional comments," that

"[r]isks include allergy, hemorrhage, infection, technical problems, paralysis, and death."[1]

Dr. Robinson testified that he also prepared an Admission Form as a requirement to have Garcia admitted to the hospital for surgery. The Admission Form indicated that the "Chief Complaint" was "low back and left leg pain from [a] work-related accident." It noted that Garcia walked with a cane and showed an "antalgic gait with a short stance phase on the left side," which Dr. Robinson explained meant that it looked like Garcia experienced pain when he walked. Dr. Robinson also noted on the Admission Form under "Physical Examination" that Garcia "has [a] low tolerance to standing in 1 position for more than 5 minutes including bending and standing" and "sits toward the

---

[1] In addition, under the heading "Full Disclosure" on the Consent Form, there was other pre-printed language, which read as follows:

I agree that my physician has informed me of the:

a) Diagnosis or probable diagnosis,

b) Nature of the treatment or procedures recommended,

c) Risks or complications involved in such treatment or procedures,

d) Alternative forms of treatment, including non-treatment, available,

e) Anticipated results of treatment.

right side of his buttock to avoid pressure on the left sciatic area."

Under the heading "Plan" of the Admission Form, the following language was printed:

> The patient was carefully advised of his diagnosis and treatment options.  He was told that surgery for discogenic disease could resolve and [sic] risk of allergy, hemorrhage, infection, technical problem, paralysis, failure of surgery to be beneficial and even death.  He was advised that bladder and bowel control could also be impaired apparently if things go poorly.  He was advised that he can still choose to live with the discomfort and be treated conservatively as in the past but he chose to proceed with surgical treatment and gave his informed consent.

Garcia's signature does not appear on the Admission Form, and there appears to be no place on it for the patient's signature.  Garcia testified that he understood that conservative treatment combined with physical therapy and pain medications was not going to improve his condition and allow him to return to work.

On March 4, 2008, Dr. Robinson performed surgery on Garcia, which included a "bilateral L4-5 and right L5-S1 partial laminectomy with forminatomy," and Dr. Robinson later expressed his opinion that the operation was done properly.  However, after the surgery, Garcia reported increased low back pain, uncontrolled shaking of his left leg, and numbness in his left leg and foot.  He also described suffering emotionally, experiencing depression, and having trouble sleeping.  Garcia

related that he received treatment for mental and/or emotional disturbance after the surgery.

On March 13, 2008, Dr. Robinson evaluated Garcia's post-surgery condition. Garcia reported needing a cane to walk and experiencing increased pain in his lower back such that he could not sit on both buttocks to distribute his weight evenly because his left leg would become numb. Dr. Robinson testified that he thought Garcia lacked control over his "right leg or perhaps both legs" and observed his "right leg shaking uncontrollably" during the appointment.

On April 4, 2008, Garcia returned for another post-surgical consultation. Dr. Robinson suspected and noted in his report that Garcia was experiencing "failed back syndrome," which meant that Garcia did not experience any relief after receiving the surgical treatment. Garcia met with Dr. Robinson several more times as a follow-up to his surgical procedure, with the last visit on December 11, 2008. Before this last visit, a postoperative MRI demonstrated a "mild bulging disk above the level of the surgery" and showed that "the nerves looked like they were decompressed."

Garcia stated that he later consulted with Jeffrey Lee, M.D., who informed him that he had a "bulging disc above the level of surgery" caused by the surgery and that the

"surgery should have been at a different level." After conferring with Jon Scarpino, M.D., Garcia indicated that he learned that the success rate of the surgery was fifty-percent or less. Garcia related that his condition did not improve after the surgery or leave him free of pain; rather, his left leg deteriorated after the surgery and his lower back pain worsened. He reported that, despite the pain in his back before the surgery, he did not need to use a cane whereas he needed to use a cane after the surgery.[2]

## B. Circuit Court Proceedings

On November 1, 2010, Garcia filed a Complaint against Dr. Robinson in the Circuit Court of the First Circuit (circuit court), setting forth claims of medical negligence and negligent failure to obtain informed consent. In the Complaint, Garcia asserted, inter alia, that Dr. Robinson "failed to properly inform [him] of the risks involved with the surgery and misrepresented the lack of risk involved." Specifically, Garcia stated that Dr. Robinson informed him that the type of surgery performed had a ninety-percent success rate and that Garcia would be "dancing in a couple of days" after the surgery.

---

[2] Garcia subsequently filed a medical malpractice claim before the Medical Claims Conciliation Panel, which issued its decision on September 3, 2010.

Garcia contended that, as a consequence of Dr. Robinson's negligence in performing the surgery and in advising him of the risks, he suffered serious bodily injuries, experienced physical and emotional pain and suffering, incurred expenses for health care and products, and endured loss of income and other damages.

Dr. Robinson filed an Answer denying Garcia's claims of negligence in performing the surgery and in informing him of the risks associated with the surgery. Dr. Robinson subsequently filed a Motion for Summary Judgment (MSJ). Dr. Robinson contended, inter alia, that he was entitled to judgment as a matter of law on Garcia's claim of negligent failure to obtain informed consent because Garcia did not have medical expert testimony as to the "materiality" of the risk to support his claim. Dr. Robinson maintained that HRS § 671-3(b) governs the physician-owed duty of disclosure and contended that to proceed on a lack of informed consent claim, a plaintiff must adduce expert testimony as to "the nature of risks inherent in a particular treatment, the probabilities of therapeutic success, the frequency of the occurrence of particular risks, and the nature of available alternatives to treatment" (materiality factors). Because Garcia did not have expert testimony as to the materiality factors, Dr. Robinson argued that Garcia's lack of informed consent claim must be "dismissed." Additionally,

relying on his own declaration that his care and treatment of Garcia was not a proximate cause of Garcia's injuries, Dr. Robinson maintained that Garcia's claims failed for lack of an expert opinion establishing that the surgery was the proximate cause of Garcia's injuries.[3]

At the September 11, 2012 MSJ hearing, Garcia contended that Dr. Robinson did not accurately inform him of the chances of success of the proposed surgical procedure and misrepresented the anticipated results in indicating that there was a ninety-percent chance of success and that he would be "up and dancing" in a couple of days.  Relying on Dr. Robinson's deposition testimony regarding what risks were necessary to disclose, Garcia argued that he had provided sufficient testimony to advance his lack of informed consent claim to trial.  Garcia maintained that he did not need to present additional expert testimony to confirm Dr. Robinson's testimony.

At the close of the hearing, the circuit court determined that a claim of negligent failure to obtain informed consent requires that a plaintiff establish the materiality of the risk asserted by providing expert testimony as to the common

---

[3] In his MSJ, Dr. Robinson also contended that Garcia's medical negligence claim must be "dismissed" because there was no medical expert opinion with respect to the applicable standard of care, a breach of that standard of care, or the proximate cause of Garcia's injuries.

law materiality factors.  These materiality factors were stated by the court as follows: (1) the nature of the risks inherent in a particular treatment; (2) the probabilities of therapeutic success; (3) the frequency of the occurrence of particular risks; and (4) the nature of available alternatives to treatment.  In a colloquy with the circuit court, Garcia's counsel acknowledged that Dr. Robinson only testified as to the first and second materiality factors.  Consequently, the circuit court concluded that Garcia did not meet all four factors required to establish the materiality of the risks and orally granted Dr. Robinson's MSJ as to both claims set forth in the Complaint.  The circuit court issued its Order Granting MSJ and entered Judgment in favor of Dr. Robinson as to all claims arising out of the Complaint.[4]

## C. Appellate Proceedings

On appeal to the Intermediate Court of Appeals (ICA), Garcia contended, inter alia, that the circuit court erred in concluding that expert testimony as to the four common law materiality factors is required to establish a prima facie case

---

[4]    The circuit court did not address, either in its oral ruling or in the subsequent written Order Granting MSJ, Dr. Robinson's contention that Garcia lacked sufficient evidence to demonstrate that the proximate cause of his injuries was the surgery.

for a claim of negligent failure to obtain informed consent.[5] Garcia asserted that his claim was based upon a violation of Dr. Robinson's duty of disclosure under HRS § 671-3(b)(5)(A). Garcia maintained that there is substantial evidence in the record to conclude that Dr. Robinson failed to accurately advise him of the material risks of serious complications associated with the procedure, including increased pain, uncontrollable shaking, and numbness in his feet and legs.

In response, Dr. Robinson argued that, under Hawai'i case law, medical expert testimony as to all four materiality factors is required to proceed on a claim of negligent failure to obtain informed consent. Because his testimony did not address all four materiality factors, Dr. Robinson contended that it was not sufficient to satisfy the expert testimony requirement for a lack of informed consent claim.

In its opinion, the ICA held that a plaintiff must establish the materiality of the alleged risk and thus must provide expert testimony as to all four common law materiality factors. The ICA concluded that Garcia lacked expert testimony as to two of the four materiality factors and thus failed to

---

[5] Garcia did not challenge that portion of the circuit court's Order Granting MSJ and Judgment related to his medical negligence claim.

13

"prove the materiality of the risk asserted." Accordingly, the ICA affirmed the circuit court's Judgment.

## II.        STANDARD OF REVIEW

Appellate courts review an award of summary judgment de novo under the same standard applied by the circuit court. Thomas v. Kidani, 126 Hawai'i 125, 127-28, 267 P.3d 1230, 1232-33 (2011). This court articulated that standard as follows:

> Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Id. at 128, 267 P.3d at 1233 (quoting Fujimoto v. Au, 95 Hawai'i 116, 136, 19 P.3d 699, 719 (2001)). "A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." Id. at 129, 267 P.3d at 1234 (quoting Fujimoto, 95 Hawai'i at 136, 19 P.3d at 719).

The moving party bears the burden of demonstrating that there is no genuine issue as to any material fact with respect to the essential elements of the claim or defense and must prove that the moving party is entitled to judgment as a matter of law. French v. Haw. Pizza Hut, Inc., 105 Hawai'i 462, 470, 99 P.3d 1046, 1054 (2004). This court must review the

14

evidence and inferences in the light most favorable to the non-moving party.  Thomas, 126 Hawai'i at 128, 267 P.3d at 1233.

### III.    DISCUSSION

In his Application for Writ of Certiorari, Garcia asserts that the ICA erred in affirming the circuit court's requirement of adducing expert testimony upon the common law materiality factors in order to maintain a prima facie case of negligent failure to obtain informed consent.  Thus, Garcia contends that the ICA further erred in ruling that he did not provide sufficient medical evidence to establish a prima facie violation of Dr. Robinson's statutory duty of disclosure.

### A.    A Physician's Statutory Duty of Disclosure

This court has determined that the standard for a physician's duty to disclose information to the patient is prescribed by HRS § 671-3(b).  Ray v. Kapiolani Med. Ctr., 125 Hawai'i 253, 266, 259 P.3d 569, 582 (2011).  In accordance with Ray, we recently held that the first element of the common law medical tort of negligent failure to obtain informed consent is "subject to appropriate modification based on the specific provisions of HRS § 671-3(b) alleged to have been violated." Ngo v. Queen's Med. Ctr., 136 Hawai'i 54, 68-69, 358 P.3d 26, 40-41 (2015).  Thus, Ngo established that a plaintiff must prove

15

the following elements for a claim of negligent failure to obtain informed consent:

> (1)  the physician owed a duty of disclosure under HRS § 671-3(b);
>
> (2)  the physician breached that duty;
>
> (3)  the patient suffered injury;
>
> (4)  the physician's breach of duty was a cause of the patient's injury in that (a) the physician's treatment was a substantial factor in bringing about the patient's injury and (b) a reasonable person in the plaintiff patient's position would not have consented to the treatment that led to the injuries had the plaintiff patient been properly informed; and
>
> (5)  no other cause is a superseding cause of the patient's injury.

Id.

As to the first element of a claim of negligent failure to obtain informed consent, HRS § 671-3(b) sets forth the information that must be provided prior to obtaining consent for a proposed treatment or procedure:

> (b)  The following information shall be supplied to the patient or the patient's guardian or legal surrogate prior to obtaining consent to a proposed medical or surgical treatment or a diagnostic or therapeutic procedure:
>
> > (1)  The condition to be treated;
> >
> > (2)  A description of the proposed treatment or procedure;
> >
> > (3)  The intended and anticipated results of the proposed treatment or procedure;
> >
> > (4)  The recognized alternative treatments or procedures, including the option of not providing these treatments or procedures;
> >
> > (5)  The recognized material risks of serious complications or mortality associated with:

16

> > > (A)     The proposed treatment or procedure;
> >
> > (B)     The recognized alternative treatments or procedures; and
> >
> > (C)     Not undergoing any treatment or procedure; and
>
> (6)     The recognized benefits of the recognized alternative treatments or procedures.

HRS § 671-3(b) (Supp. 2007); see also Ngo, 136 Hawai'i at 68-69, 358 P.3d at 40-41.  Thus, with respect to the first element, a plaintiff must provide evidence showing that the physician did not disclose information as required under a subsection of HRS § 671-3(b) prior to obtaining consent from the patient, guardian or surrogate for a proposed medical or surgical treatment or a diagnostic or therapeutic procedure.  See, e.g., Ngo, 136 Hawai'i at 69, 358 P.3d at 41 (determining that, in proving a violation of HRS § 671-3(b)(5)(A), a plaintiff must present evidence "to establish prima facie that the risk of harm to which the plaintiff was subjected is an undisclosed 'recognized material risk[] of serious complications or mortality associated with . . . [t]he proposed treatment or procedure'").

In this case, Garcia asserted in his Complaint that Dr. Robinson failed to properly inform him of the risks involved with the surgery and misrepresented the lack of risk involved. He stated that Dr. Robinson told him that the type of surgery to

17

be performed had a ninety-percent success rate, that he would be "dancing in a couple of days" after the surgery, and that he would be pain free.  Although Garcia did not specify in his Complaint that his claim of negligent failure to obtain informed consent was based upon a violation of HRS § 671-3(b)(5)(A), the allegations in the Complaint clearly implicate this provision,[6] which requires that a physician disclose the "recognized material risks of serious complications or mortality associated with . . . [t]he proposed treatment or procedure."  HRS § 671-3(b)(5)(A); see Ngo, 136 Hawai'i at 70-71, 358 P.3d at 42-43 (finding that the plaintiffs did not waive additional lack of informed consent claims for failing to assert in the complaint the specific statutory provisions upon which their claim was based because the allegations clearly implicated a physician's duty of disclosure under HRS § 671-3(b)).  Accordingly, under HRS § 671-3(b)(5)(A), Garcia was required to provide evidence that the risks to which he was subjected, namely a worsened condition and increased pain, were "recognized material risks of serious complications or mortality . . . associated with [t]he proposed treatment or procedure."

---

[6]     In his Opening Brief, Garcia identified that his claim was based upon HRS § 671-3(b)(5)(A).

18

At the summary judgment hearing, the circuit court concluded that in order to establish a prima facie informed consent claim, Garcia was required to establish the materiality of the alleged risk by providing expert medical testimony as to the four common law materiality factors: (1) the nature of the risks inherent in a particular treatment; (2) the probabilities of therapeutic success; (3) the frequency of the occurrence of particular risks; and (4) the nature of available alternatives to treatment. Because Garcia lacked expert testimony as to the third and fourth materiality factors, the circuit court held that Garcia did not establish the materiality of the alleged risk and consequently his claim failed. The circuit court thus granted summary judgment in favor of Dr. Robinson. On appeal, the ICA affirmed the circuit court's reasoning and Judgment.

However, under HRS § 671-3(b), a plaintiff is not required to provide evidence pertaining to the four common law materiality factors in order to establish a prima facie violation of a physician's duty based upon a particular subsection of HRS § 671-3(b). The evidentiary requirements for an informed consent claim based on a violation of a specific provision of HRS § 671-3(b) have been addressed in two recent opinions of this court.

19

In Ngo, we analyzed the plaintiffs' informed consent claim under HRS § 671-3(b)(5) and considered whether the plaintiffs satisfied their evidentiary burden of showing a prima facie violation of the defendant physician's statutory duty of disclosure. In that case, the plaintiffs' minor child died after the defendant physician treated her for nausea and vomiting with an antiemetic medication. Ngo, 136 Hawai'i at 57, 358 P.3d at 29. The plaintiffs asserted a claim of negligent failure to obtain informed consent based on the undisputed fact that the treating physician did not give the plaintiffs any information about the drug used to treat their minor child and its risks and side effects and did not provide any information regarding alternative treatments. Id. at 57-58, 69-70, 358 P.3d at 29-30, 41-42. The circuit court granted summary judgment in favor of the defendants, which the ICA affirmed on appeal. Id. at 57, 358 P.3d at 29. The ICA concluded that the plaintiffs did not meet their evidentiary burden with regard to proving the "materiality of the risk of harm" because they failed to adduce expert medical testimony as to all four materiality factors. Id.

This court disagreed with the analysis of the ICA. We did not apply the four common law materiality factors in analyzing the plaintiffs' claim of negligent failure to obtain

20

informed consent based on an alleged violation of HRS § 671-3(b)(5)(A), which requires disclosure of the "recognized material risks of serious complication or mortality . . . associated with the proposed treatment or procedure." Id. at 67-70, 358 P.3d at 39-42. Instead, this court applied the criteria set forth in the statute to determine whether the plaintiffs satisfied their evidentiary burden to prove a prima facie violation of the defendant physician's statutory duty of disclosure under HRS § 671-3(b)(5)(A). Id. at 68-69, 358 P.3d at 40-41. Thus, we concluded that the plaintiffs adduced sufficient expert testimony to establish prima facie that the risk of harm that resulted was a "recognized material risk[] of serious complication or mortality." Id. at 69-70, 358 P.3d at 41-42.

In applying this analysis, the Ngo court noted that one of the materiality factors, the probabilities of therapeutic success, while not part of an informed consent claim based on an alleged HRS § 671-3(b)(5)(A) violation, was information required to be provided for a claim under HRS § 671-3(b)(3), the intended and anticipated results of the proposed treatment or procedure. Id. at 71, 358 P.3d at 43. In analyzing the HRS § 671-3(b)(3) claim, the court applied a single materiality factor because that factor coincided with the requirements of the statutory

21

provision upon which the claim was based.  Id.  That is, "disclosure of the probabilities of therapeutic success intended" as required by the statute is essentially equivalent to the common law formulation of the "anticipated results of the proposed treatment or procedure."

In Ray, this court reviewed the plaintiffs' claim of negligent failure to obtain informed consent under HRS § 671-3(b)(4), which requires the physician to inform the patient of the recognized alternative treatments or procedures, including the option of not providing these treatments or procedures.  The court considered whether the defendant physician had a statutory duty to disclose alternative dosages of the same medication under HRS § 671-3(b)(4).  Ray, 125 Hawai'i at 265-68, 259 P.3d at 581-84.  Although the court mentioned the four materiality factors, the court did not apply them to the facts of the case.  Id. at 268, 259 P.3d at 584.  Instead, the court observed that requiring the disclosure of alternative doses would not "overwhelm" healthcare providers, as the defendant contended, because a plaintiff would need to show that an alternative dose is a "recognized alternative treatment."  Id. at 268, 259 P.3d at 584.  That is, the court noted that one of the materiality factors, the nature of alternatives to treatment, coincides with the requirements for a claim under HRS § 671-3(b)(4) because the

22

wording of the statute ("recognized alternative treatments or procedures") is essentially the same as that factor.  Id.

In light of the express statutory provisions of HRS § 671-3(b),[7] the common law materiality factors do not apply to a claim of negligent failure to obtain informed consent, and the circuit court and the ICA erred in relying upon them instead of on the statute.  Although it is not erroneous for a court to apply a materiality factor when that factor is identical to the statutory requirements, HRS § 671-3(b) governs the analysis, and it is error to require evidence upon a materiality factor when that factor does not coincide with the requirement of the applicable subsection of HRS § 671-3(b).  Consequently, Dr. Robinson was not entitled to judgment as a matter of law based on lack of expert testimony as to the common law materiality factors.

**B. Sufficiency of Evidence to Support a Prima Facie Claim**

In reviewing the circuit court's award of summary judgment, we apply the same standard as the circuit court. Thomas v. Kidani, 126 Hawai'i 125, 127-28, 267 P.3d 1230, 1232-33

_____

[7] For an overview of the evolution of the informed consent doctrine, including the "interplay between the common law and [HRS § 671-3(b)]," see Ngo v. Queen's Med. Ctr., 136 Hawai'i 54, 63-68, 358 P.3d 26, 34-40 (2015).  Ngo indicates that the common law formulation of the materiality factors has been supplanted by the statutory requirements under HRS § 671-3(b).  Id.

(2011). For a defendant physician to prevail on a motion for summary judgment upon a claim of negligent failure to obtain informed consent, "the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Id. at 128, 267 P.3d at 1233 (quoting Fujimoto v. Au, 95 Hawai'i 116, 136, 19 P.3d 699, 719 (2001)). The defendant physician bears the burden of demonstrating there is no genuine issue as to any material fact with respect to the essential elements of the lack of informed consent claim. French v. Haw. Pizza Hut, Inc., 105 Hawai'i 462, 470, 99 P.3d 1046, 1054 (2004). When the defendant physician satisfies this initial burden, then the burden shifts to the plaintiff to demonstrate "specific facts, as opposed to general allegations, that present a genuine issue worthy of trial." See id. (emphasis omitted) (quoting GECC Fin. Corp. v. Jaffarian, 79 Hawai'i 516, 521, 904 P.2d 530, 535 (App. 1995)).

Dr. Robinson maintains that he was entitled to summary judgment as a matter of law on the informed consent claim in this case because Garcia failed to adduce sufficient expert testimony to proceed upon his claim under HRS § 671-3(b)(5). Under this subsection, Garcia was required to establish that

24

increased pain and a worsened condition were "recognized material risks of serious complications" associated with the back surgery performed. See Ngo, 136 Hawai'i at 67-68, 358 P.3d at 39-40.

Although expert testimony is not required under HRS § 671-3(b), "expert testimony is typically necessary to establish the medical information statutorily required to be disclosed." Id. at 69, 358 P.3d at 41. In appropriate cases, a defendant physician, by his or her own testimony, may satisfy the plaintiff's evidentiary burden. See id. at 71, 358 P.3d at 43 (recognizing that plaintiffs' counsel elicited valid expert testimony from the defendant-physician regarding recognized alternative treatments); Carr v. Strode, 79 Hawai'i 475, 487, 904 P.2d 489, 501 (1995) (citing Nishi v. Hartwell, 52 Haw. 188, 196-97, 473 P.2d 116, 121 (1970)) (stating that a defendant-physician's testimony may satisfy the plaintiff's evidentiary burden).

At his deposition, Dr. Robinson testified that he discusses the same list of risks with every patient in addition to others depending on the situation and specifically advised Garcia of surgical risks associated with the proposed procedure, including allergy, hemorrhage, infection, technical problems, paralysis, failure of surgery to be beneficial, and even death.

Additionally, he related that he discusses the risk of increased pain with every patient because there is a risk that patients undergoing this type of back surgery might experience further pain. Further, he testified that he tells every patient about potential technical problems and explains that "surgery is a very involved complex production of treatment and there are some things that can go wrong." He also stated that this type of surgery "is one of the most painful experiences that patients undergo in surgery" and takes time to fully recover. Based on these statements, Dr. Robinson indicated that increased pain and a worsened condition were "recognized material risks of serious complications" associated with the surgery. Accordingly, Garcia provided sufficient medical evidence, through Dr. Robinson's deposition testimony, that increased pain and a worsened condition were "recognized material risks of serious complications" of the back surgery performed, and thus this was information required to be disclosed under HRS § 671-3(b)(5)(A).

Whether Dr. Robinson accurately disclosed these "material risks of serious complications" associated with the surgery was disputed. Garcia contends that Dr. Robinson told him (1) the proposed back surgery had a ninety-percent success rate, (2) Garcia would be "up and dancing" in a few days, and (3) Garcia would be pain free. By contrast, Dr. Robinson

26

maintains that (1) he does not discuss percentages with patients, (2) he does not recall discussing with Garcia that he would be "up and dancing" after the procedure, although it would be "preposterous" to tell a patient that he or she would be "dancing three days after lumbar spine surgery," and (3) he denied "unequivocally" that he told Garcia that he would have no further pain.

Viewing the evidence and inferences in the light most favorable to Garcia, there is a disputed genuine issue of material fact as to whether Dr. Robinson accurately disclosed the "recognized material risks of serious complications" associated with the procedure performed. Consequently, we hold that the circuit court and the ICA erred in concluding that Dr. Robinson was entitled to judgment as a matter of law on Garcia's claim of negligent failure to obtain informed consent under HRS § 671-3(b)(5)(A).

## IV. CONCLUSION

For the foregoing reasons, we vacate in part the ICA's June 29, 2015 Judgment on Appeal and the circuit court's Judgment as to the claim of negligent failure to obtain informed consent and remand the case to the circuit court for further

proceedings consistent with this opinion.[8]  We otherwise affirm

the ICA's June 29, 2015 Judgment on Appeal and the circuit

court's Judgment.

| | |
|---|---|
| Michael P. Healy and | /s/ Mark E. Recktenwald |
| Charles H. Brower | |
| for petitioner | /s/ Paula A. Nakayama |
| | |
| Thomas E. Cook and | /s/ Sabrina S. McKenna |
| Edquon Lee | |
| for respondent | /s/ Richard W. Pollack |
| | |
| | /s/ Michael D. Wilson |



---

[8]     In granting Dr. Robinson's MSJ, the circuit court did not address Dr. Robinson's contention as to a lack of showing of causation in its oral ruling or written order.  On remand, this issue may be further addressed as appropriate.